J. Thomas and Eleanor F. Requard, et al. [1] v. Commissioner. Requard v. Commissioner
Docket Nos. 5209-63.-5211-63.
United States Tax Court
T.C. Memo 1966-141; 1966 Tax Ct. Memo LEXIS 140; 25 T.C.M. (CCH) 732; T.C.M. (RIA) 66141; June 23, 1966
Edmund D. Meyers, for the petitioners. Eugene I. Meyers, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined deficiencies in the income tax of petitioners for the years and in the amounts as follows: Dkt.
No.
Petitioner
Year
Deficiency
5209-63
J. Thomas and Ele-
anor F. Requard
1956
$ 4,287.89
1957
130,341.30
1958
113,503.02
1959
118,017.35
5210-63
Estate of Kathryn M.
Requard, et al.
1956
30,752.88
1957
723.12
5211-63
Louis T. and Clara F.
Requard
1956
4,621.39
1957
91,417.98
1958
72,204.23
1959
76,012.58
The above-indicated dockets are consolidated herewith for decision. The issues presented for our decision are: (1) Whether the gain realized by Kathryn Requard from the disposition of her partnership interest in the Requard Investment Company on December 31, 1956, constitutes ordinary income or long-term capital gain; (2) Whether Kathryn Requard's basis for computing gain resulting from the disposition of her partnership interest in the second *146 Requard Investment Company on December 31, 1956, exceeds $21,862.05; (3) Whether the basis of petitioner J. Thomas Requard's interest in 122 Maryland ground rents on December 31, 1956, exceeds $68,449.37; (4) Whether the gain realized by petitioners J. Thomas Requard and Louis Requard from the sale of their interests in 122 Maryland ground rents to Kathyrn Requard on December 31, 1956, constitutes long-term capital gain or ordinary income; (5) Whether the third Requard Investment Company is entitled to claim an increased basis for 84 building lots transferred to the Requard Building Company during May 1957; (6) Whether the Requard Building Company is entitled to claim an increased basis for computing depreciation on certain partnership assets for 1957, 1958, and 1959; (7) Whether the third Requard Investment Company realized taxable consideration in the amount of $242,756.89 from the sale of 383 building lots to the Stamford Land Company in 1957; (8) Whether the third Requard Investment Company is entitled to claim an increased basis in the 383 building lots sold to the Stamford Land Company in 1957; (9) Whether the gain realized by the third Requard Investment Company *147 from the sale of 383 building lots to the Stamford Land Company in 1957 constitutes ordinary income or long-term capital gain; (10) Whether the gain realized by the third Requard Investment Company from the sale of six building lots to the Episcopal Church in 1957 constitutes ordinary income or long-term capital gain; (11) Whether the third Requard Investment Company is entitled to claim an increased basis in the six building lots sold to the Episcopal Church in 1957; (12) Whether petitioner J. Thomas Requard is entitled to claim an increased basis in his proportionate part of the 383 lots sold to the Stamford Land Company and the 6 lots sold to the Episcopal Church by the third Requard Investment Company in 1957; (13) Whether petitioner J. Thomas Requard is entitled to claim an increased basis in his proportionate part of certain assets sold by the Requard Building Company in 1958; (14) Whether the third Requard Investment Company is entitled to claim an increased basis in two waterfront building lots; and (15) Whether the gain realized by petitioner Louis Requard from the disposition of certain building lots during 1956 and 1957 constitutes ordinary income or long-term *148 capital gain. Additional issues raised by the pleadings have been disposed of by agreement or concession of the parties. General Findings of Fact The stipulated facts are found as stipulated. Petitioners J. Thomas and Eleanor F. Requard filed their joint income tax returns for the years 1956, 1957, 1958, and 1959 with the director at Baltimore, Maryland. On each of these returns J. Thomas Requard listed his occupation as "homebuilder." Kathryn M. Requard filed her income tax return for 1956 with the director at Baltimore, Maryland. On her return for 1956 Kathryn listed her occupation as "homebuilder." Kathryn M. Requard died in 1960. Petitioners Louis T. and Clara F. Requard filed their joint income tax returns for 1956, 1957, 1958, and 1959 with the director at Baltimore, Maryland. On each of these returns Louis T. Requard listed his occupation as "homebuilder." J. Thomas Requard is the son of Julius Requard and the stepson of Kathryn Requard. During the years here pertinent Julius and Kathryn Requard were husband and wife until the death of Julius on September 7, 1954. Petitioner Louis T. Requard is the brother of Julius. The Requards began building houses in the *149 Dundalk, Maryland, area in 1937 and continued homebuilding activities in that area more or less continuously through 1956. The Requards also purchased land in the Dundalk area at various times during the period 1937 through 1956. During the period January 1, 1951 through September 7, 1954, J. Thomas Requard, Julius Requard, and Louis Requard were actively engaged in various real estate transactions including the purchase and sale of undeveloped land, the construction of rental properties and the management thereof, and the construction and sale of houses. From September 8, 1954 through December 31, 1956, J. Thomas Requard together with Kathryn Requard and Louis Requard continued their real estate and homebuilding activities. In connection with the conduct of their real estate activities throughout the years here material the Requards formed several partnerships and corporations through which they conducted their affairs and which hereinafter will be more fully described. During the period January 1, 1951 through September 7, 1954, Kathryn, Julius, Louis, and J. Thomas Requard were partners in the J. H. Requard Realty Company (sometimes hereinafter referred to as the Realty Company), *150 a partnership which was actively engaged in homebuilding and real estate transactions. This partnership originally had been formed in 1942. As a division of the Realty Company, the Requards owned and operated a building supply business under the name of Gray Manor Supply Company. The Realty Company also owned all of the outstanding stock of the Shore Lumber Company, a corporation engaged in the lumber business in the Eastern Shore area of the State of Maryland. During the period 1951 through 1956 there was an active building and sales market for residence property located in the Dundalk, Maryland, area and the market value of land situated in this area consistently increased throughout that period. Early in 1951 the Requards acquired an interest in a parcel of land owned by Sherwood Homes, Inc., located in Dundalk, Maryland. This tract consisted of 112 acres of undeveloped land and was conveyed to the Requards on or about October 11, 1951. They designated this tract as the Lynch Road Tract. This land was regarded by the Requards as choice land for development purposes. On October 1, 1951, Julius, Kathryn, Louis, and J. Thomas Requard formed a partnership venture designated *151 the Requard Investment Company (sometimes hereinafter referred to as the Investment Company or Investment Company No. 1). The partnership agreement provided that the purpose of the venture was to "purchase and hold real estate as an investment and not to be held for improvement, development, and resale in individual lots." Each of the four partners in the Investment Company was an equal partner therein with respect to both partnership capital and the sharing of profits and losses. On October 11, 1951, the Lynch Road Tract was contributed to the Investment Company by the Requards and was entered on the books and records thereof at a cost basis of $157,593.45. In order to reflect the contribution of this land to the Investment Company, the partners' respective capital accounts were credited as follows: Kathryn Requard
$39,398.36
Julius Requard
39,398.37
J. Thomas Requard
39,398.36
Louis Requard
39,398.36
On May 16, 1951, the zoning applicable to the Lynch Road Tract was changed from individual residential home use to group house use. The zoning change was made upon application to the Zoning Board of Baltimore County by Sherwood Homes, Inc., but the *152 Requards paid the costs of filing the application. On November 29, 1951, the Investment Company had a plat prepared of the Lynch Road Tract showing its subdivision into lots. The plat was prepared for the purpose of commencing the construction of rental houses on the entire tract. In 1952 the Requards hired an architect to draw up plans for the houses they intended to construct on the Lynch Road Tract. From December 10, 1952 to March 9, 1953, there was an account in the Investment Company captioned "Land - 81 acres" in which there appeared a debit item of $10,640. This land was treated on the books of the Investment Company as a debit to the land account, and credits equal to one-fourth of $10,640 were made to each partner's capital account. On March 9, 1953, the land account in the Investment Company was credited in the amount of $10,640, and debits equal to one-fourth of $10,640 were made to each partner's capital account. The books of the Realty Company show a debit entry of $10,640 to a land account known as "81 Acres," which entry is dated March 9, 1953. On March 9, 1953, the 81 acres of land were sold to a third person, and gain was reported by the Realty Company on its 1953 *153 return at ordinary income rates. In March 1953, the Requards had a plat prepared of a portion of the Lynch Road Tract which they designated as Section 1, Gray Haven. The plat indicated a total of 357 building lots to be located in Section 1. The plat of the Lynch Road Tract was revised on April 1, 1953, pursuant to a change in the plans of the Requards who decided to construct 926 houses, together with the necessary roads, on approximately 78.5 acres of the Lynch Road Tract. The balance of the 112-acre tract was to be used for a park and school with 8.8 acres allotted for commercial use. On April 22, 1953, Julius Requard, representing himself as developer of the Lynch Road Tract, submitted information to the Federal Housing Administration regarding his plans for developing the land. Included in such information was an estimate by Julius that the fair market value of the undeveloped Lynch Road property was $5,000 per acre. On April 29, 1953, the Requards formed a corporation known as the Lynch Road Building Corporation. The outstanding stock of this corporation was held as follows: Shares
Kathryn Requard
25
Julius Requard
25
J. Thomas Requard
50
Louis Requard
50
*154 On April 29, 1953, the Gray Haven Company was incorporated by the Requards as a wholly owned subsidiary of the Lynch Road Building Company, which owned all of the outstanding capital stock of the former corporation. The minutes of the boards of directors of the two above-mentioned corporations disclose that it was the intention of the directors that the Gray Haven Company would acquire land from the Requard Investment Company and that the parent corporation, the Lynch Road Building Corporation, would construct houses on the land owned by the Gray Haven Company. During May 1953, the partners of the Requard Investment Company before any subdividing expense was incurred or paid determined that the cost basis of each of the 926 lots which had been laid out on 78.5 acres of the Lynch Road Tract was $140.75 per lot. This amount was arrived at by dividing the number of lots into the cost of 78.5 acres, which was determined by the Requards to be $130,329.57. On May 1, 1953, the Requards donated approximately 16 acres of the Lynch Road Tract to the Commissioners of Baltimore County for use as a park. Also, on May 1, 1953, they sold approximately 20 acres of land to the Baltimore County *155 Board of Education for use as a school site. Included therein were 6.7 acres of the Lynch Road Tract and approximately 13.4 acres of an adjacent tract owned by the Requards designated the Bear Creek Tract. On June 23, 1953, the Requards conveyed title to 123 lots of the Lynch Road Tract to the Gray Haven Company.the Lynch Road Building Corporation subsequently constructed group or row houses on each of the 123 lots owned by its subsidiary corporation. Upon completion each of such houses was rented. None of them were ever sold. On November 17, 1953, the Requards conveyed title to 52 lots of the Lynch Road Tract to the Gray Haven Company. The Lynch Road Building Corporation constructed houses on each of these lots which, upon completion, were rented to tenants. None of these houses were ever sold. On May 18, 1954, the Requards conveyed title to 70 lots of the Lynch Road Tract to the Gray Haven Company. The Lynch Road Building Corporation subsequently constructed houses on these lots which, in turn, were rented to tenants. None of these houses were ever sold. Prior to September 7, 1954, the Requards changed their plans with respect to the Lynch Road Tract and ceased to build houses *156 thereon for rental purposes. Thereafter, the Requards constructed single dwelling houses on the property for sale to the public. On September 7, 1954, Julius Requard died. In his last will and testament, Julius devised and bequeathed one-third of the value of his adjusted gross estate (as determined for Federal estate tax purposes) to Kathryn Requard, and the remaining two-thirds of the value of his adjusted gross estate was devised and bequeathed to J. Thomas Requard. The will provided that the executors of the estate were vested with sole authority and discretion to select and designate the assets or interests therein with which to satisfy the devise and bequest to Kathryn. J. Thomas Requard was one of three executors of the estate. The books and records of the Requard Investment Company and Requard Realty Company disclosed the transfer of 35 lots of the Lynch Road Tract from the Investment Company to the Realty Company as of September 30, 1954. The books of the Realty Company listed the property as "Gray Haven - first 35 houses for sale (No. 4)." On October 19, 1954, Kathryn, Louis, and J. Thomas Requard entered into a partnership agreement forming a new partnership venture *157 known as the Requard Building Company, (sometimes hereinafter referred to as the Building Company). The agreement provided that the partnership was effective as of September 8, 1954. The purpose of the Building Company was stated to be to purchase, lease, or acquire land and to own, develop, operate, improve, mortgate, and sell or dispose of such property. The individual percentages of sharing profits and losses among the three partners in the Building Company were as follows: Kathryn
20%
Louis
40%
J. Thomas
40% No capital interests were set out in the partnership agreement. Although the Requard Realty Company continued as a partnership among Kathryn, Louis and J. Thomas Requard during the period September 8, 1954 through December 31, 1956, many of its assets gradually were transferred to the Building Company, which was engaged in the business of homebuilding. On October 19, 1954, Kathryn, Louis, and J. Thomas Requard executed another partnership agreement forming a venture known as Requard Investment Company (sometimes hereinafter referred to as Investment Company No. 2 or the second Investment Company), to be created effective as of September 8, 1954. The *158 partnership agreement provided that the purpose of Investment Company No. 2 was to "purchase and hold real estate as an investment and not to be held for improvement or development." [2]
The individual percentages of sharing profits and losses among the three partners in Requard Investment Company No. 2 were as follows: Kathryn
2/9
Louis
3/9
J. Thomas
4/9 No capital interests were contained in the agreement. The business activities of the original Investment Company were continued without interruption after October 19, 1954, by the second Investment Company. On January 1, 1955, the capital accounts of J. Thomas, Louis, and Kathryn Requard on the books of Investment Company No. 2 contained credit *159 balances as follows: Kathryn Requard
$27,315.33
Louis Requard
27,315.34
J. Thomas Requard
27,315.35
On January 1, 1955, 35 lots designated Gray Haven No. 4, together with the work in progress therein, were transferred from the Realty Company to the Building Company. Houses were constructed on each of the 35 lots comprising Gray Haven No. 4. On May 2, 1955, the Requards created ground rents on these 35 lots. During the period May 30, 1955 through November 8, 1955, the 35 houses in Gray Haven No. 4 were sold to the public subject to the ground rents. The total proceeds, exclusive of the value of the 35 ground rents, received by the Building Company from the sale of the 35 houses was $329,200. The total construction cost of the improvements was $325,962.01. The total capitalized value of the 35 ground rents created on May 2, 1955, was $52,500. The books and records of Investment Company No. 2 reflect the transfer of 35 lots of the Lynch Road Tract to the Building Company as of June 30, 1955. This group of lots was designated on the books of the Building Company as Gray Haven No. 5. On November 21, 1955, Kathryn, Louis, and J. Thomas Requard formed *160 a corporation known as Requard Homes Company (sometimes hereinafter referred to as Homes). The outstanding stock of Homes was held as follows: Louis Requard
50
J. Thomas Requard
50
Kathryn Requard
25
On November 25, 1955, Requard Homes Company entered into a contract with the Requard Building Company pursuant to which the Building Company agreed to construct 42 houses on the lots owned by Homes. The stated contract price of the houses to Homes ranged between $10,150 and $11,100 per house, depending upon the type of house built. During December 1955, 42 lots of the Lynch Road Tract were conveyed by Investment Company No. 2 to Homes. This group of lots, together with the houses eventually constructed thereon, was designated Gray Haven No. 6. On December 23, 1955, the executors of the estate of Julius filed an account with the Orphan's Court of Baltimore County. On that date a distribution was made to Kathryn of one-third of the partnership interest in Investment Company No. 1 owned by the estate of Julius. In the estate tax return filed by the executors of the estate of Julius Requard, the fair market value of 67.5 acres of the Lynch Road Tract was *161 listed at $4,000 per acre as of the date of his death. On December 23, 1955, a distribution from the estate of Julius was made to J. Thomas Requard consisting of two-thirds of the partnership interest in first Investment Company owned by Julius at the time of his death. On December 23, 1955, a distribution was made to Kathryn Requard of $45,261.52, representing 48 percent of the unliquidated portion of the partnership interest in the Realty Company owned by Julius at the time of his death. A distribution was made to J. Thomas Requard on December 23, 1955, of 52 percent of Julius' partnership interest in the Realty Company. On December 31, 1955, the capital accounts of Kathryn, J. Thomas, and Louis appearing on the books of the Investment Company contained credit balances as follows: Kathryn Requard
$24,379.76
Louis Requard
24,227.78
J. Thomas Requard
24,075.79
As of December 31, 1955, no entries appeared on the books of the second Investment Company to reflect the distributions to Kathryn and J. Thomas of Julius' partnership interest in the Investment Company. On January 3, 1956, Kathryn, J. Thomas, and Louis executed an agreement which provided, *162 in pertinent part, as follows: WITNESSES that whereas the parties hereto are associated as partners for the conduct of a home-building business and building material supply business, and other operations, and for the effective conduct of said businesses, varying amounts of capital investment are necessary, and whereas the parties hereto desire to compensate each other for their various investments, and at the same time compensate each other for the risks taken and services rendered, therefor. It is agreed between the parties hereto that in the following companies, operated for the following purposes, that the parties shall maintain capital investments as necessary for company purposes in amounts to be agreed on, and each partner shall be allowed interest on his investment at the prevailing rate on construction mortgages, beginning January 1, 1956, and the remaining profits shall be distributed according to the following previously established shares: J. H. Requard Realty Company, remaining in operation only for the purpose of liquidating its investments and accounts receivables, and completing its construction operations in association with Clayton E. Burns, has the profit sharing *163 ratio of Kathryn M. Requard 2/9 (22.22%), Louis T. Requard, Sr., 3/9 (33.33%), and J. Thomas Requard 4/9 (44.45%). * * *
The Requard Building Company, operating a homebuilding business, taking over the operation of the building supply business, and entering into any additional mutually agreed on projects, has the profit sharing ratio of Kathryn M. Requard 1/5 (20%), Louis T. Requard, Sr., 2/5 (40%), and J. Thomas Requard 2/5 (40%). * * *
It is further agreed between the parties hereto that in the following companies, operated for the following purposes, that the partners shall maintain capital investments in the same proportions as their following respective shares of profit, therefore no interest shall be allowed any partner before the calculation of profit, and capital requirements shall not exceed the following, unless subsequently mutually agreed on: The Requard Investment Company shall hold title to the partners vacant land on Lynch Road known as Gray Haven. There shall be no profit on any transfer of said land to any of the partners own companies, but profit may be earned if said land is sold to anyone else, which profit would be shared by Kathryn M. Requard 2/9 (22.22%), *164 Louis T. Requard, Sr., 3/9 (33.33%), and J. Thomas Requard 4/9 (44.45%). Total capital shall not exceed $99,000.00, or $22,000.00, from Kathryn M. Requard, $33,000.00 from Louis T. Requard, Sr., or $44,000.00 from J. Thomas Requard. (For this purpose, the interest of Julius H. Requard shall be regarded as taken over by Kathryn M. Requard, and J. Thomas Requard as of January 1, 1956.) The general journal of Investment Company No. 2 contains the following entry: Mar. 15, 1956
Dr.
Cr.
J. H. Requard, Capital
$27,315.31
K. M. Requard, Capital
$ 9,105.10
J. T. Requard, Capital
18,210.21
To effect distribution as per first
administration account.
The amount of $9,105.10 credited to Kathryn's capital account in the second Investment Company by the journal entry dated March 15, 1956, represented one-third of the book value of Julius Requard's partnership interest as of September 7, 1954, as reported by the executors on the estate tax return. Kathryn inherited one-third of Julius' partnership interest in the first Investment Company at its fair market value as of September 7, 1954. The fair market value of the Lynch Road Tract on September 7, 1954, was *165 $537,000. The fair market value of Julius' partnership interest on that date was $134,315.35. Kathryn did not increase her capital account on the books of the second Investment Company by the amount of appreciation over book value attributable to this inheritance of one-third of Julius' partnership interest. As of January 3, 1956, and as a result of the agreement of that date between and among Kathryn, J. Thomas, and Louis, the following capital interests were established in the second Investment Company: Kathryn Requard
2/9
Louis Requard
3/9
J. Thomas Requard
4/9 The partners maintained these interests through December 31, 1956. The general journal of Investment Company No. 2 contains the following entry: Jan. 3, 1956
Dr.
Cr.
K. M. Requard, Capital
$11,226.10
J. T. Requard, Capital
$2,121.00
L. T. Requard, Capital
9,105.10
To adjust capital as of 1/1/56 to
ratios of 2/9-3/9-4/9 the same as profit
sharing ratio as per agreement.
The general journal of the Realty Company contains the following entry: Jan. 3, 1956
Dr.
Cr.
J. T. Requard, Capital
$2,121.00
L. T. Requard, Capital
9,105.10
K. M. Requard, Capital
$11,226.10
As of this date the opposite entry
was made on the books of the Re-
quard Investment Company.
What KMR was charged there and
LTR and JTR credited, they repay
her here.
*166 The journal and ledger books of the Realty Company and the second Investment Company indicate that the entries dated January 3, 1956, were actually made in the books of the respective partnerships in March 1956. The purpose of the above-indicated entries was to reduce Kathryn's capital account in Investment Company No. 2 to approximate the $22,000 limit imposed under the agreement executed January 3, 1956. On May 4, 1956, the Requards engaged an engineer to prepare a plat of a portion of the Lynch Road Tract adjacent to Section 2, Gray Haven. The plat so prepared designated a portion of the Gray Haven subdivision as Section 3. The plat of Section 3 was signed by Kathryn, J. Thomas, and Louis Requard, as owners, and the plat was filed in the public records of the Baltimore County Land Records on September 13, 1956. Houses were constructed on 35 lots of the Lynch Road Tract constituting Gray Haven No. 5 and on January 27, 1956, the Requards created ground rents on these 35 lots. During the period February 7, 1956 through November 12, 1956, the 35 houses in Gray Haven No. 5 were sold to third persons subject to ground rents. The total proceeds received by the Requard Building Company *167 from the sale of the 35 houses located in Gray Haven No. 5 was $333,225. The above-stated amount did not include the capitalized value of the ground rents created thereon which was $47,430. The total construction cost of the 35 houses was $330,075.41. Houses were constructed on 42 lots located in Gray Haven No. 6 During the period September 5, 1956 through December 11, 1956, these 42 houses were sold to third persons subject to ground rents thereon. The total proceeds received by Requard Homes Company from the sale of the houses located in Gray Haven No. 6 were $400,025. The total capitalized value of the 42 ground rents on the property located in Gray Haven No. 6 was $63,200, which amount is not reflected in the total proceeds received as stated above. During the period December 31, 1955 through December 31, 1956, no lots were withdrawn from the second Investment Company. During 1956 the Building Company expended $145,575.34 in connection with the construction of houses located in the portion of the Lynch Road Tract designated as Gray Haven No. 7. These lots were retained by the Investment Company No. 2 until May 1957. During 1956 the Building Company expended $20,099 in connection *168 with the construction of houses on 42 lots on the Lynch Road Tract known as Gray Haven No. 8. These lots also were retained by Investment Company No. 2 until May 1957. Pursuant to a construction contract executed November 25, 1955, between the Requard Homes Company and the Building Company, Homes owed the Building Company $449,900 for the construction of the 42 houses located on Gray Haven No. 6. The records of Homes disclose that the 42 ground rents created on the lots located in Gray Haven No. 6 were transferred to the Building Company as of December 31, 1956, at their capitalized value of $63,200. Homes treated the capitalized value of the ground rents as a partial payment of its obligation to the Building Company. On its Federal income tax return for 1956, Homes reported $463,225 as proceeds received from the "sales of 42 houses (including ground rents)" and computed a gross profit of $2,498.07 resulting from such sales. Prior to December 31, 1956, a public works agreement was entered into by Baltimore County with Investment Company No. 2 with respect to Section 2, Gray Haven. This public works agreement designated the second Investment Company as the "developer" of the land *169 and was signed "Requard Investment Company, J. Thomas Requard, Partner." On its 1956 partnership return, the Requard Building Company reported proceeds in the amount of $449,900 received under a contract with the Homes Company and claimed construction costs of $401,600.52. The Building Company also reported profits from the sale of houses located in Gray Haven Nos. 5 and 6 at ordinary income rates on its partnership return for 1956. On December 30, 1956, Kathryn, J. Thomas, and Louis Requard entered into an agreement which provided, in pertinent part, as follows: This agreement, made this 30th day of December, 1956, by and between Kathryn M. Requard, Louis T. Requard, Sr., and J. Thomas Requard, all of Baltimore County, State of Maryland, WHEREAS, the said Kathryn M. Requard, Louis T. Requard, Sr. and J. Thomas Requard have been engaged in various business operations together as co-partners, trading as THE REQUARD INVESTMENT COMPANY, THE REQUARD BUILDING COMPANY and J. H. REQUARD REALTY COMPANY, and, WHEREAS Kathryn M. Requard desires to withdraw from the said partnerships and the said partners have agreed that the said partnership agreements shall be terminated and dissolved *170 as of December 31st, 1956, NOW, THIS AGREEMENT WITNESSETH, that in consideration of the sum of one dollar ($1.00) by each party to the others in hand paid, receipt whereof is hereby mutually acknowledged, and in consideration of the mutual covenants and agreements herein contained, it is agreed as follows: 1. That the assets owned by the partnerships, the known liabilities of the partnerships, and the partners' interests in said partnerships, are shown on the balance sheets attached hereto and made a part hereof, * * *. 2. That Kathryn M. Requard accepts from the partnership assets of The Requard Building Company and The Requard Investment Company, in full settlement of all her interests and claims of any kind against said partnership assets, cash in the amount of $63,443.56 (Sixty-three thousand, four hundred forty-three dollars and fifty-six cents); 112 (one hundred and twelve) ground rents on Gray Haven Road and Park Haven Road, and 10 (ten) ground rents on Manoff Road, all located in Baltimore County, Maryland; and a mortgage on the partnership land on Lynch Road in the amount of $50,000.00 (Fifty-thousand dollars) upon the terms and conditions contained therein. The said *171 Louis T. Requard, Sr. and J. Thomas Requard shall accordingly have free and clear title to all remaining partnership property, real and personal, subject only to the aforesaid mortgage on the Lynch Road Land. 3. That the said Kathryn M. Requard shall have an undivided two-ninths interest, Louis T. Requard, Sr., an undivided three-ninths interest, and J. Thomas Requard an undivided four-ninths interest in the net assets of J. H. Requard Realty Company, which assets shall be distributed after collection and provision for reserves. 4. That the above said partnerships are hereby terminated and dissolved as of December 31st, 1956. 5. Each party hereto does hereby release the others from all liability relating to the original partnership agreements made between the parties hereto, and from any liability to the others relating to the conduct of said partnership businesses from their origin to the date of dissolution. 6. This agreement shall be binding upon the parties hereto, their heirs, legal representatives and assigns. On December 31, 1956, Kathryn Requard sold her interest in the second Investment Company to her former partners, Louis and J. Thomas Requard, for $72,037.12. *172 On December 31, 1956, immediately prior to the sale by Kathryn of her interest in Investment Company No. 2, the amount of land remaining in the Lynch Road Tract retained by the second Investment Company consisted of a total of approximately 59.6 acres or 665 building lots. This included all of the projects designated Gray Haven Sections 2, 3, 4, and 5. A portion of the above-stated facts concerning property owned by the first and second Requard Investment Companies, as well as pertinent information regarding such property during 1957 and 1958 which hereinafter will be discussed more fully, may be summarized as follows: Descrip-
Nature of
Final use by
Date of
tion of
Investment
Project
disposition
final dis-
Company
land
transaction
Date
designation
by Requards
position
Lynch
Purchased
10/ 1/51
Road
Tract -
112 acres
81 acres
Transferred
3/ 9/53
Sold to
3/9/53
by first
public by Re-
Investment
alty Co.
Co. to
Realty Co.
[1]
6.7 acres
Sold by
5/ 1/53
Investment
Co.
No. 1 to
Board of
Education,
Baltimore
County, for
school
site. [2]
16 acres
Donated by
5/ 1/53
Investment
Co. No. 1 to
Balti-
more County
for
park.
123 build-
Transferred
6/23/53
Group house
by Invest-
construc-
ing lots
ment Co. No.
tion.
1 to
Retained as
the Gray
rental
Haven Co.
property.
52 build-
Transferred
11/17/53
Group house
by Invest-
construc-
ing lots
ment Co. No.
tion.
1 to
Retained as
Gray Haven
rental
Co.
property.
70 build-
Transferred
5/18/54
Group house
by first
construc-
ing lots
Investment
tion.
Co. to
Retained as
Gray Haven
rental
Co.
property.
35 build-
Transferred
9/30/54
Gray Haven
Single
5/ 3/55 to
by second
dwelling
resi-
ing lots
Investment
No. 4.
dential
11/8/55.
Co. to
construction.
the Realty
Transferred
Co.
by Re-
alty Co. to
Build-
ing Co. on
1/1/55.
Houses sold
by
Building Co.
to
public,
subject to
ground rents.
.8 acre [3]
Withdrawn
10/31/54
from Re-
alty Co. and
con-
tributed to
Invest-
ment Co. No.
2.
35 build-
Transferred
6/30/55
Gray Haven
Single
2/ 7/56 to
by Invest-
dwelling,
resi-
ing lots
ment Co. No.
No. 5.
dential
11/12/56.
2 to
construction.
Building Co.
Houses sold
by
Building Co.
to
public,
subject to
ground rents.
42 build-
Transferred
12/19/55
Gray Haven
Single
9/ 5/56 to
by Invest-
dwelling,
resi-
ing lots
ment Co. No.
No. 6.
dential
12/11/56.
2 to
construction.
Requard
Houses sold
Homes Co.
by
Homes Co. to
pub-
lic, subject
to
ground rents.
665 build-
Formal
12/31/56
dissolution
of
ing lots
Investment
Co. No.
2.
665 build-
Contributed
1/ 1/57
to Invest-
ing lots
ment Co. No.
3.
84 build-
Transferred
5/31/57
Gray Haven
Single
Various
by third
dwelling,
resi-
ing lots
Investment
Nos. 7
dential
dates
Co. to
construction.
Building Co.
and 8.
Houses sold
1957-1958
by
Building Co.
to
public,
subject to
ground rents.
573 build-
Sold by
12/20/57
Investment
ing lots
Co. No. 3 to
Stam-
ford Land
Co. [4]
6 build-
Sold by
12/27/57
Investment
ing lots
Co. No. 3 to
Epis-
copal
Church.
2 build-
Sold by
2/ 3/58
Investment
ing lots
Co. No. 3 to
Stam-
ford Land
Co.
*173 That part of the Lynch Road Tract remaining in the second Investment Company on December 31, 1956, immediately prior to Kathryn's sale of her interest therein to J. Thomas and Louis was property which had appreciated substantially in value. Entries were made on the books of the Realty Company and the Building Company on December 31, 1956, showing the transfer of assets from the Realty Company to the Building Company. J. Thomas and Louis Requard continued as partners in a partnership known as the Requard Investment Company (sometimes hereinafter referred to as Investment *174 Company No. 3 or the third Investment Company) after Kathryn left the partnership and conducted the same business activities under that name subsequent to January 1, 1957. Throughout the years here involved, additional land was purchased by the Requards from time to time, and houses were constructed thereon, and eventually sold. In her income tax return for 1956 Kathryn reported long-term capital gain totaling $43,559.78, computed as follows: Sale of partnership interests: Requard Investment Company - acquired Sept. 8, 1954
Proceeds of sale - December 31, 1956
$ 72,037.12
Less: Basis of partnership interest
33,877.33
$38,159.79
J. H. Requard Realty Company - acquired Sept. 8, 1954
Proceeds of sale - December 31, 1956
221,648.81
Less: Basis of partnership interest
220,871.04
777.77
Requard Building Company - acquired Sept. 8, 1954
Basis of partnership interest - December 31, 1956
(22,584.42)
Less: Amount paid in settlement of capital account
per withdrawal agreement
(17,962.20)
4,622.22
$43,559.78
The $33,877.33 amount shown on Kathryn's 1956 return as representing the basis of her partnership interest in the Investment *175 Company consisted of the book value of her interest ($21,862.05) plus a claimed special basis adjustment of $12,015.28, reflecting the inheritance by her of one-third of Julius Requard's partnership interest at its fair market value as determined by the executors of Julius' estate. The amount of $220,871.04 shown on Kathryn Requard's return as representing the basis of her partnership interest in the Realty Company was comprised of the book value of her interest in the Realty Company as of December 31, 1956. At no time during the period September 8, 1954, through December 31, 1956, was the election provided in section 761(a) of the Internal Revenue Code of 1954 (providing an election to be treated as an investment partnership) in effect on behalf of any of the three Investment Companies. At no time during the period 1951 through December 31, 1956, were any of the elections as provided in section 734, 743, or 754 of the 1954 Code (relating to optional adjustments to basis of partnership property) in effect on behalf of any of the Investment Companies or their partners. Issue 1. Character of Gain Resulting From Sale of Kathryn Requard's Partnership Interest *176 in the Requard Investment Company Opinion Petitioner, Estate of Kathryn Requard, contends that on December 31, 1956, Kathryn Requard disposed of her interest in distributed assets of the second Requard Investment Company and that the resulting gain qualified as long-term capital gain from the sale of capital assets within the meaning of section 1121 of the Internal Revenue Code of 1954. [3]
Respondent has taken the position that, at the close of 1956, Kathryn did not actually *177 receive a distribution of her interest in the partnership assets of Investment Company No. 2 but rather transferred her partnership interest to Thomas Requard. The respondent further contends that the gain realized by Kathryn from the disposition of her interest in the second Investment Company on December 31, 1956, constituted ordinary income. The record fails to establish that the transaction which occurred on December 31, 1956, was in fact a liquidating distribution of partnership assets to Kathryn Requard and the other partners in the second Requard Investment Company, and we are of the opinion that what actually happened on that date constituted a transfer of her partnership interest to Thomas Requard as Kathryn reported on her 1956 return. Section 741 of the 1954 Code [4] provides, in general, that gain realized from the sale of a partnership interest shall be considered as gain from the sale or exchange of a capital asset except as otherwise provided in section 751. *178 Section 751(a) of the Code provides: SEC. 751. UNREALIZED RECEIVABLES AND INVENTORY ITEMS. (a) Sale or Exchange of Interest in Partnership. - The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to - (1) unrealized receivables of the partnership, or (2) inventory items of the partnership which have appreciated substantially in value, shall be considered as an amount realized from the sale or exchange of property other than a capital asset. The respondent contends that the portion of the Lynch Road Tract remaining in Investment Company No. 2 on December 31, 1956, properly constituted "inventory items of the partnership which have appreciated substantially in value." Petitioner agrees that the remaining portion of the Lynch Road property held by the second Investment Company on December 31, 1956, had "substantially appreciated in value" within the meaning of section 751 but insists that such property did not constitute an "inventory item" of the partnership under that section. Although real estate is not the type of property which normally can be carried *179 in an inventory by a taxpayer (see W. H. Hay, 25 B.T.A. 96; Atlantic Coast Realty Co., 11 B.T.A. 416), for purposes of applying the so-called "collapsible partnership" provisions contained in section 751 of the Code, subdivided real estate may constitute inventory within the meaning of that section. Clarence A. Luckey, 41 T.C. 1, affd. 334 F. 2d 719. Section 751(d)(2) contains the following definition of an inventory item.. Sec. 751(d)(2) Inventory Items. - For purposes of this subchapter the term "inventory items" means - (A) property of the partnership of the kind described in section 1221(1), (B) any other property of the partnership which, on sale or exchange by the partnership, would be considered property other than a capital asset and other than property described in section 1231, and (C) any other property held by the partnership which, if held by the selling or distributee partner, would be considered property of the type described in subparagraph (A) or (B). If such property is to be classified as "held * * * primarily for sale to customers in the ordinary course of * * * trade or business" within the meaning *180 of section 1221(1) of the Code, the purpose of the partnership to so hold the property must be the principal purpose, or that which is of first importance. Malat v. Riddell, 383 U.S. 569 (1966), remanding 347 F. 2d 23. We are of the opinion that the record here establishes that the Lynch Road property held by the second Investment Company at the close of 1956 was held not only primarily but exclusively for sale to its customers in the ordinary course of its trade or business. It seems clear that from the time the Requards first acquired an interest in the Lynch Road Tract early in 1951 they contemplated the subdivision and development thereof. The property located in the Lynch Road parcel was regarded by the Requards as choice land for development purposes. The general area in which the land was situated near Dundalk, Maryland, contained an active building and sales market during the years here pertinent. The Requard family was active in the real estate business in Dundalk for many years. The homebuilding activities of the Requards in the Dundalk, Maryland, area commenced in 1937 and continued generally without interruption through 1956. Their real estate *181 activities during 1951 through 1956 included the buying and selling of land, construction of property for rental purposes, the leasing and maintenance of rental property, and the construction and sale of dwelling houses. Throughout the years here in issue, additional land was purchased by the Requards from time to time, and houses were constructed thereon and eventually sold. Immediately after the contribution by the Requards of the Lynch Road Tract to the first Investment Company in October 1951, they had the entire tract platted and subdivided into building lots, indicating the number of group or row houses that could be built thereon. It appears that it was the intention of the Requards in October 1951 to develop the entire tract by constructing row houses thereon which would be retained as rental property. The first Requard Investment Company sold a 6.7-acre parcel of the Lynch Road Tract (possibly under threat of condemnation) to the Board of Education of Baltimore County for a school site on March 9, 1953. Through April 1954, at least 245 building lots were withdrawn by the partners from the first Requard Investment Company and transferred to the Gray Haven Company as sites *182 on which to construct houses which were retained as rental property. However, the record discloses that during 1954 the Requards changed their intentions and purpose with respect to the Lynch Road Tract and began building houses for sale on the remaining portion of the land. During 1955 and 1956, a total of 112 building lots were transferred out of the second Investment Company to the other Requard-owned partnerships and corporations, which constructed houses on such lots and subsequently sold the houses to third parties subject to Maryland ground rents. The second Investment Company actually commenced development activities with respect to certain portions of the Lynch Road Tract while the land was still retained by that partnership and, in at least one instance, the second Investment Company was listed on a public document as the "developer" of a part of the Lynch Road Tract. It seems clear that from mid-1954 on, the business of the Requard Investment Companies included the holding, subdivision, and development of the Lynch Road Tract as well as the sale of building lots and newly-constructed dwellings to related Requard enterprises and, either directly or indirectly, to the public. *183 During the years here involved, the Requards were engaged in all phases of the land development, real estate, and homebuilding business and even conducted their own building supply and lumber businesses. The Investment Companies quite clearly were regarded by the Requards as the repository of raw land for their entire operations and thus become the hub of all their real estate activities. Petitioners point out that at the time of the formation of the first Investment Company on October 1, 1951, the articles of copartnership provided that its purpose was "to purchase real estate as an investment and not to be held for improvement, development, subdivision or resale in individual lots." However, it is abundantly clear in view of the subsequent events that the Requards abandoned this original intention not later than mid-1954. They have introduced no evidence which would tend to indicate that during 1955 or 1956 they held the balance of the Lynch Road Tract in the second Investment Company for any purpose other than the sale of lots and houses to customers in the ordinary course of its trade or business. See *184 W. T. Thrift, Sr., 15 T.C. 366; Eline Realty Co., 35 T.C. 1. In the absence of convincing evidence showing that Investment Company No. 2 intended during 1956 to hold the remaining portion of the Lynch Road Tract merely as an investment and that the sales during that year merely represented the liquidation of such investment, we must agree with the respondent's position. We therefore hold that inasmuch as the property in question was held by the Investment Company "primarily for sale to customers in the ordinary course of * * * trade or business" under section 1221(1) of the Code, such property properly constituted an inventory item which had appreciated substantially in value within the definitions prescribed by section 751(a)(2) and (d)(2)(A) of the Code. Thus the gain realized by Kathryn Requard on December 31, 1956, from the sale of her partnership interest in the Requard Investment Company to Thomas Requard constituted ordinary income as the respondent has determined. Issue 2. Basis of Kathryn Requard's Partnership Interest in the Requard Investment Company Findings of Fact Prior to his death, Julius Requard made a gift in the amount of $50,000 to *185 Louis Requard. Julius also requested Kathryn Requard to make an additional $50,000 gift to Louis. On her income tax return for 1956 Kathryn Requard reported the transfer of her partnership interest in Investment Company No. 2 as of December 31, 1956, as the sale or exchange of a capital asset, computing long-term capital gain as follows: Proceeds of sale of partnership
interest
$72,037.12
Basis of partnership interest
33,877.33
Gain recognized
$38,159.79 In his statutory notice of deficiency respondent determined that Kathryn realized gain from the disposition of her partnership interest as follows: Proceeds of sale of partnership
interest
$72,037.12
Basis of partnership interest
21,862.05
Gain recognized
$50,175.07
Opinion Petitioner, Estate of Kathryn M. Requard, claims that Kathryn's basis in her partnership interest as of December 31, 1956, should be increased by the fair market value of her one-third share of Julius' one-fourth partnership interest in the first Investment Company as of the date of his death. [5] In its petition, petitioner alleges that the gain realized by Kathryn from the disposition of her partnership *186 interest on December 31, 1956, should be computed as follows: Proceeds of sale
$72,037.12
Cost of partnership interest
$21,862.05
Special basis adjustment (per original
Federal Estate Tax
Return)
12,015.28
Special basis adjustment (resulting
from examination of
Federal Estate Tax Return)
14,971.56
48,848.89
Gain on sale, as adjusted
$23,188.23
*187 The respondent concedes on brief that Kathryn Requard did in fact inherit one-third of Julius Requard's partnership interest in the first Investment Company at its fair market value as of the date of his death on September 7, 1954. The parties further agree that the fair market value of Julius' interest in Investment Company No. 1 on that date was $134,315.35 and that Kathryn Requard inherited one-third of his interest at a value of $44,771.78. It is the respondent's contention, however, that for some unexplained reason Kathryn actually disposed of her inherited portion of Julius' interest in the first Investment Company at some time prior to December 31, 1956, and therefore that the basis of her retained interest was not greater than the $21,862.05 amount determined in the notice of deficiency. It is clear that from the time of the formation of Investment Company No. 1 on October 1, 1951, until the death of Julius on September 7, 1954, each of the members in that partnership was an owner of an equal one-fourth interest in both the partnership capital and the profits and losses thereof. Following the death of Julius, Kathryn, Thomas, and Louis executed a new partnership agreement *188 on October 19, 1954, relating to the formation of Investment Company No. 2. In that agreement a new profit-loss sharing proportion was established effective as of September 8, 1954. The profits and losses of the second Investment Company were to be shared as follows: Kathryn
2/9 (approximately 22%)
Louis
3/9 (approximately 33%)
Thomas
4/9 (approximately 45%) The above-described agreement did not prescribe any specific amounts of partnership capital nor were any limits set with respect to the total capital of the partnership. On January 1, 1955, the capital accounts of Kathryn, Thomas, and Louis Requard reflect credit balances on the books of Investment Company No. 2 as follows: Kathryn
$27,315.33
Louis
27,315.34
Thomas
27,315.35 In the estate tax return filed by the executors of the estate of Julius during September 1955, the book value of his partnership interest in Investment Company No. 1 as of September 7, 1954, was listed at $127,315.33. Accordingly, it is clear that as the result of the October 19, 1954, agreement the profit-sharing interests of the remaining partners were adjusted and Kathryn's share of the profits *189 or losses of the first Investment Company was reduced from 25 percent to approximately 22 percent. The capital account balances of the partners, however, were carried over from the capital accounts of the original Investment Company and continued to reflect an equal one-fourth interest on the part of each of the partners, including the estate of Julius. On December 23, 1955, the executors of the estate of Julius distributed one-third of his partnership interest in the first Investment Company to Kathryn and two-thirds of Julius' interest in that partnership to Thomas. No entries were made on the books of Investment Company No. 2 during 1955 to reflect the distribution to Kathryn and Thomas of Julius' partnership interest. As of December 31, 1955, the capital accounts of Kathryn, Thomas, and Louis appearing on the books of the second Investment Company contained credit balances as follows: Kathryn
$24,379.76
Louis
24,227.78
Thomas
24,075.79
On January 3, 1956, Kathryn, Louis, and Thomas entered into a new partnership agreement which provided that the capital investments of the partners in Investment Company No. 2 would be maintained in the same proportions *190 as their profit-sharing interests (two-ninths, three-ninths, four-ninths). The agreement specifically provided that the total capitalization of the partnership would not exceed $99,000, or $22,000 from Kathryn, $33,000 from Louis, and $44,000 from Thomas. The above-mentioned agreement also specifically provided that Kathryn would be regarded as receiving her inherited portion of Julius' interest as of January 1, 1956. An entry was made on the books of Investment Company No. 2 under date of March 15, 1956, pursuant to which the book value of Julius Requard's partnership interest as of the date of his death ($27,315.31) was divided between Thomas and Kathryn on a 2 to 1 ratio, with Thomas' capital account credited in the amount of $18,210.21 and Kathryn's capital account credited in the amount of $9,105.10. Therefore it appears that as of January 1, 1956, the book value of Kathryn's partnership interest was $33,484.86 ($24,379.76 plus $9,105.10). In order to reduce Kathryn's capital account balance in Investment Company No. 2 to the $22,000 maximum provided by the agreement executed January 3, 1956, her account was decreased by $11,226.10 on the books of the second Investment Company *191 as of that date. On the same date, corresponding credit entries totaling $11,226.10 were made to the capital accounts of Thomas and Louis. Utilizing the agreed fair market value of a one-fourth interest in the first Investment Company partnership as of September 7, 1954, viz., $134,315.35, it is clear that Kathryn not later than December 23, 1955, acquired an interest in the second Investment Company partnership totaling approximately $179,087.13 in value. She, at this point, owned approximately 33 percent of the capital of that partnership, Thomas owned approximately 42 percent of the capital of the Investment Company, and Louis owned approximately 25 percent. [6] If, on the other hand, a comparison of the book values of the respective interests of the partners as of January 1, 1956, is made, the same approximate proportional interests in partnership capital appear. [7]
*192 To review briefly the above-described series of transactions, it is clear that from October 1, 1951 through September 7, 1954, Kathryn Requard owned a 25 percent interest in both the capital and profits of the first Investment Company. From September 7, 1954 through December 22, 1955, she owned only a 22 percent interest in the partnership profits of the second Investment Company but apparently a one-fourth interest in partnership capital. As of December 23, 1955, as the result of her inheritance of one-third of Julius' partnership interest, Kathryn owned 33 percent of the capital of the second Investment Company; Thomas owned approximately 42 percent; and Louis owned approximately 25 percent. As modified under the partnership agreement executed January 3, 1956, Kathryn retained only a 22 percent interest in partnership capital, having given up an interest therein of approximately 11 percent. No explanation for Kathryn's lessened interest is contained in the record. However, Louis Requard wound up owning approximately 33 percent of the capital of the second Investment Company under the agreement of January 3, 1956, and Thomas retained approximately 45 percent of the partnership capital. *193 The partners' profit-sharing ratios on January 3, 1956, remained unchanged from the ratios determined under the agreement of October 19, 1954. It therefore seems clear that as the result of the January 3, 1956, agreement Kathryn relinquished approximately 11 percent of her partnership interest - a percentage of partnership capital having a book value of $11,226.10 and having a fair market value greatly in excess of that amount. The final confirmation of Kathryn's relinquishment of a portion of her partnership interest is reflected in the transaction occurring on December 31, 1956, whereby the second Investment Company was dissolved and Kathryn transferred her partnership interest to Thomas for $72,037.12. Although the record discloses that during 1954 and 1955 the second Investment Company transferred 70 building lots, the total amount actually received by Kathryn as consideration for her interest in the partnership as reflected by the record before us is strikingly small. At the very most, Kathryn actually received no more than $77,000 [8] for a partnership interest which, if retained without diminution from December 23, 1955 to the close of 1956, would have been worth roughly $179,000. *194 [9]
Petitioner has chosen to allow a cloud of mystery to remain over these transactions. The record indicates that prior to his death, Julius made a gift to Louis in the amount of $50,000 and further requested Kathryn to make an additional gift to Louis in that amount. It may be that the agreement of January 3, 1956, which modified the respective capital interests of the partners in Investment Company No. 2 in part reflected *195 Kathryn's desire to consummate this $50,000 gift in accordance with the request of her deceased husband. However that may be, as a result of these unexplained events and confusing bookkeeping entries, one thing stands out in bold relief: Kathryn Requard at some point gave up a very sizable portion of her valuable partnership interest in the second Investment Company. Where it went and why, we do not know. But wherever it went, a proportionate part of her basis in her total partnership interest went with it. Consequently, although it is unquestioned that Kathryn acquired by inheritance one-third of Julius' partnership interest not later than December 23, 1955, it is also clear that she failed to retain it and that she did not possess it on December 31, 1956. Inasmuch as petitioner has failed to show that the basis of Kathryn's partnership interest on December 31, 1956, was greater than the amount determined by the respondent, we sustain his determination. Issue 3. Basis of Ground Rents Findings of Fact On December 31, 1956, a distribution was made to J. Thomas Requard of his interest in 122 ground rents. Deeds conveying title to the 122 ground rents to Kathryn Requard were executed *196 on March 20, 1957, and were recorded on the land records of Baltimore County, Maryland, on March 21, 1957. One of the above-mentioned deeds conveyed title to 42 ground rents directly from Requard Homes to Kathryn Requard. These 42 ground rents originally had been created on the group of lots described above as Gray Haven No. 6. The second of the above-mentioned deeds dated March 20, 1957, was executed by Kathryn, Louis, and J. Thomas Requard as "co-partners trading as Requard Building Company" and conveyed title to 70 ground rents to a straw party who immediately reconveyed title to Kathryn. These 70 ground rents originally had been created on the group of lots designated as Gray Haven Nos. 4 and 5. J. Thomas sold his interest in these 122 ground rents to Kathryn as part payment for her interests in the Building Company and the Investment Company partnerships which were purchased from her by J. Thomas and Louis on December 31, 1956. The 122 ground rents which Kathryn received pursuant to the agreement of dissolution executed December 30, 1956, consisted of 112 ground rents created on lots located in Gray Haven Nos. 4, 5, and 6, plus 10 ground rents created on property located *197 on Manoff Avenue which had been held by the Realty Company and were not part of the Lynch Road Tract. In their income tax return for 1956 petitioners reported the sale of J. Thomas Requard's interest in the 122 ground rents to Kathryn as the sale of a capital asset. The resulting gain was treated as long-term capital gain and was computed by petitioners on their return as follows: Proceeds of sale
$77,800.40
Actual land cost to J.
Thomas Requard
$33,848.53
Special basis adjustment
2,803.57
36,652.10
Gain on sale
$41,148.30
In his notice of deficiency respondent disallowed the $2,803.57 amount claimed by petitioners on their 1956 return as a "special basis adjustment" and determined that their basis in the 122 ground rents sold by J. Thomas to Kathryn on December 31, 1956, was $68,449.37, resulting in gain on the sale in the amount of $9,351.03. The respondent further determined that the gain so realized constituted ordinary income. In their petition, petitioners claimed that J. Thomas Requard actually realized a loss in the amount of $8,008.62 from the sale of 122 ground rents to Kathryn Requard on December 31, 1956. In their petition, *198 petitioners computed their basis in the ground rents and the resulting loss claimed as follows: Proceeds of sale
$77,800.40
Actual land cost to J. Thomas Requard
$33,848.53
Special basis adjustment (per original
Fed-
eral estate tax return)
$ 2,803.57
Special basis adjustment (resulting from
examination of Federal estate tax return)
14,556.08
17,359.65
Additional basis adjustment (arising from
Commis-
sioner's statutory notice of deficiency
to which
petitioners have agreed)
34,600.84
85,809.02
Loss on sale, as adjusted
($ 8,008.62)
Opinion Although the parties have not aided our understanding of this issue with lucidity on brief, they appear to be broadly in agreement that on December 31, 1956, petitioner J. Thomas Requard in substance, if not in form, transferred his interest in 122 Maryland ground rents to Kathryn Requard in partial payment for her partnership interests in the second Investment Company and the Building Company, or for her interests in the distributed assets thereof. The question here relates to the basis of petitioner's interest in the 122 ground rents transferred to Kathryn. As we understand *199 the respective positions of the parties on this issue, they are in agreement that J. Thomas Requard's actual investment in the parcels of land to which the 122 ground rents here in question were subject amounted to $33,848.53. On their income tax return for 1956 petitioners have added $2,803.57, making a total basis in the ground rents of $36,652.10. The additional $2,803.57 was claimed as a "special basis adjustment." In his deficiency notice the respondent disallowed the entire amount claimed as a "special basis adjustment." In his notice of deficiency respondent further determined that J. Thomas Requard was entitled to utilize an additional basis in the amount of $34,600.84 which, when added to his investment in the properties here involved, constituted a total basis in the ground rents of $68,449.37. [10] The parties apparently agree that the petitioner's basis in the ground rents here involved was not less than $68,449.37. *200 Petitioners claim that J. Thomas Requard's allowable basis in the 122 ground rents transferred to Kathryn on December 31, 1956, should have been $85,809.02 rather than the figure determined by the respondent. Petitioners contend that with Thomas' basis in the ground rents so computed, he actually realized a loss on the sale in the amount of $8,008.62. [11] Their computation of his basis in the ground rents consists of adding $17,359.65 (which includes the $2,803.57 amount originally claimed by petitioners on their 1956 return as a "special basis adjustment") to the $68,449.37 amount allowed by respondent. In support of their basis computation petitioners contend that the basis of the partnership assets, consisting entirely of 122 ground rents which were distributed to Thomas on December 31, 1956, by the Building Company and the Realty Company, should be increased so as to equal the basis of his inherited interests in those partnerships as of September 7, 1954. *201 Julius Requard died on September 7, 1954, and pursuant to the provisions of his will petitioner acquired by inheritance two-thirds of his father's partnership interests in both the Requard Investment Company and the Requard Realty Company. Redwood v. Howison, 129 Md. 577, 99 Atl. 863; Matthews v. Fuller, 109 Md. 42, 120 A. 2d 356. The basis of Thomas' inherited partnership interests in the Building Company and the Realty Company was the fair market value thereof at the date of Julius' death. Section 113(a)(5), Internal Revenue Code of 1939; section 1014(a), Internal Revenue Code of 1954. Under the provisions of the respondent's regulations, the fair market value of Thomas' inherited partnership interests is the appraised value thereof for purposes of the Federal estate tax. Section 1.1014-3(a), Income Tax Regs.
The parties agree that the fair market value of Julius' interest in Investment Company No. 1 on September 7, 1954, was the amount as determined by the respondent's agents, viz., $134,315.35. They have stipulated that the increase in the value of Julius Requard's partnership interest in the first Investment *202 Company above the book value thereof ($27,315.33) was attributable exclusively to the increased market value of the Lynch Road Tract. Petitioners' brief fails to enlighten us as to the foundation for their contention that the tax basis of the partnership assets distributed to Thomas Requard should be stepped up so as to equal the basis of his inherited partnership interests. They cite no authority whatever in support of their position but simply assume that they are entitled to claim such a step-up in the basis of the distributed ground rents. [12]
Section 743(a) of the 1954 Code provides: Sec. 743(a) General Rule. - The basis of partnership property shall not be adjusted as the result of a transfer of an interest in a partnership by sale or exchange or on the death of a partner unless the election provided by section 754 (relating to optional adjustment to basis of partnership property) is in effect with respect *203 to such partnership. Further, it has been held, prior to the enactment of the 1954 Code, that the transfer of a partnership interest either by sale or inheritance does not entitle the incoming partner who acquired such interest as a result of the transfer to adjust the basis of his proportionate share of the partnership assets. Robert E. Ford, 6 T.C. 499; Anderson v. United States, 232 F. 2d 794. If petitioners have in mind section 732(d) of the 1954 Code which, in certain prescribed circumstances entitles a partner who has purchased or inherited a partnership interest to elect to adjust the basis of partnership assets subsequently distributed to him, they have failed to establish that Thomas Requard ever attempted to exercise the election required under that section. [13]
*204 In the absence of evidence indicating that petitioner's basis in the distributed Maryland ground rents as of December 30, 1956, was actually greater than the basis figure determined by the Commissioner, we must leave the parties where we find them and the respondent's determination of Thomas Requard's basis in those ground rents is sustained. Issue 4. Character of Gain Realized from Sale of Ground Rents Opinion On their income tax return for 1956 petitioners J. Thomas and Eleanor F. Requard reported gain resulting from the disposition of 122 Maryland ground rents to Kathryn as long-term capital gain. In his notice of deficiency, respondent determined that the gain so realized constituted ordinary income. On brief, petitioners contend that the ground rents distributed to Thomas Requard by the Building Company and the Realty Company at the close of 1956 constituted a capital asset in his hands within the meaning of section 1221 (see footnote 3), and that the disposition thereof to Kathryn resulted in long-term capital gain. In support of their position the petitioners point to the fact that the Building Company, on its original and amended partnership returns for 1955, listed *205 among its assets the Maryland ground rents which were classified as "investments." They further claim that prior to December 31, 1956, Thomas Requard did not own any ground rents and was not engaged in the business of buying and selling Maryland ground rents. Under section 735(a)(2) of the 1954 Code, it is provided that if a distributee-partner disposes of distributed partnership assets which are classified as "inventory items" within 5 years from the date of distribution, any resulting gain or loss shall not be regarded as capital gain or loss. Section 735(a)(2) states: Section 735(a)(2) Inventory Items. - Gain or loss on the sale or exchange by a distributee partner of inventory items (as defined in section 751(d)(2)) distributed by a partnership shall, if sold or exchanged within 5 years from the date of the distribution, be considered gain or loss from the sale or exchange of property other than a capital asset. It is apparent here that petitioner received a distribution of his partnership interest in 122 ground rents on December 31, 1956, and that he disposed of his interest in such ground rents to Kathryn Requard on the same day. Since it is clear that Thomas Requard sold *206 his interest in the 122 Maryland ground rents within 5 years from the date of distribution, the only remaining question to be resolved is whether or not such ground rents can properly be classified as "inventory items" under section 735(a)(2) of the Code. In ascertaining whether or not distributed partnership assets constitute inventory items we are referred by section 735(a)(2) to a statutory definition contained in section 751(d)(2) of the Code which provides as follows: Sec. 751(d)(2) Inventory Items. - For purposes of this subchapter the term "inventory items" means - (A) property of the partnership of the kind described in section 1221(1), (B) any other property of the partnership which, on sale or exchange by the partnership, would be considered property other than a capital asset and other than property described in section 1231, and (C) any other property held by the partnership which, if held by the selling or distributee partner, would be considered property of the type described in subparagraph (A) or (B). Of the 122 ground rents in question, 112 were created by the Building Company in connection with 112 lots upon which houses were built and which were located *207 in the projects known as Gray Haven Nos. 4, 5, and 6. Ten of the Maryland ground rents were created by the Realty Company in connection with 10 lots located on Manoff Avenue. It is the respondent's position that since the 122 ground rents here involved were created and held by Building Company and Realty Company in connection with residential subdivisions and they constructed dwelling houses that were held by those partnerships for sale to customers in the ordinary course of their business activities, the ground rents themselves must likewise be regarded as having been held for sale to customers in the ordinary course of their business. We agree. As we previously pointed out in our opinion under Issue 1, supra, the record herein discloses that from the time the Requards acquired an interest in the Lynch Road Tract early in 1951 they envisioned the subdivision and development thereof. The land located in the Lynch Road Tract was regarded by the Requards as choice land for development purposes. The Dundalk, Maryland, area contained an active building and sales market during the years here involved. The Requards were active in the real estate business in Dundalk for many years. Prior *208 to May 16, 1951, this tract of unimproved land was zoned solely for individual home use. On May 16, 1951, the Zoning Commission of Baltimore County ordered the zoning classification changed on the Lynch Road Tract to group house use. Although the application itself was filed in the name of Sherwood Homes, Inc., the application fee was actually paid by the Requards. The Lynch Road property consisted of approximately 112 acres. The homebuilding activities of the Requards in the Dundalk, Maryland, area commenced in 1937 and continued generally without interruption through 1956. Their real estate activities from 1951 through 1956 included the buying and selling of land, the construction of property for rental purposes, the leasing and maintenance of rental property, and the construction and sale of dwelling houses. Land was purchased by the Requards from time to time throughout all of the years here involved and houses were constructed thereon and eventually sold. Many of the real estate and homebuilding transactions of the Requards as conducted through September 1954 were carried on by the partnership known as Requard Realty Company which was originally formed in 1942. The members *209 of this partnership were Kathryn, Julius, Thomas, and Louis Requard. The Realty Company operated a building supply business known as Gray Manor Supply Company and also owned all of the outstanding stock of the Shore Lumber Company which was engaged in the lumber business on the Eastern Shore of Maryland. During the period January 1, 1951 through December 31, 1954, the Requard Realty Company sold six parcels of land and reported the gain realized from the sale of such land at ordinary income rates for Federal income tax purposes. During 1955, the Requard Realty Company sold four parcels of land which had been acquired prior to September 1954. The resulting gain was reported at ordinary income rates for Federal income tax purposes. The Requard Building Company was formed in October 1954 by Kathryn, Louis, and Thomas Requard for the purpose of purchasing, leasing, or acquiring land to own, develop, improve, mortgage, and sell. From the time of the formation of the Building Company through December 31, 1956, many of the assets of the Realty Company gradually were transferred to the Building Company. The Building Company was actively engaged in the business of homebuilding throughout *210 that period. During 1955 and 1956 the Requard Building Company constructed dwelling houses on the 112 Lynch Road lots subdivided and described as Gray Haven Nos. 4, 5, and 6. Upon completion of these dwelling houses at various times during 1955 and 1956, the Building Company sold each of the newly constructed houses located in one of the above-described Gray Haven projects subject to an outstanding Maryland ground rent. From an examination of the record herein it is abundantly clear in view of the apparent purpose of the Requard Realty Company and Requard Building Company in acquiring and subdividing the Lynch Road Tract, the construction of new houses on each of the subdivided lots, the nature of the business activities of both the Realty Company and the Building Company, and the frequency, continuity and substantiality of the sales of land and improved residential property made by those partnerships during 1955 and 1956 that the properties to which the Maryland ground rents here in question were subject were held for sale by those partnerships in the ordinary course of their trade or business. *211 W. T. Thrift, Sr., supra; Eline Realty Co., supra; Kaltreider v. Commissioner, 255 F. 2d 833, affirming 28 T.C. 121. The parties agree that the ground rents involved herein were the typical ground rent arrangements that traditionally have been used in the State of Maryland. Such ground rents were created at various times by the Requards, as owners in fee, conveying to a straw party a leasehold interest of 99 years' duration, renewable forever, the straw in turn conveying to the lessee a lot or lots, together with improvements thereon, subject to a ground rent in the reversioner. The leasehold was conditioned upon the payment by the lessee of a specified annual rental. In Maryland the rents payable under leases of the above-stated type are commonly referred to as "ground rents"; the party who owns legal title to the property and to whom the rents are payable is customarily referred to as the "owner of the ground rents"; and the party liable for the payment of the specified rental is often referred to as the "owner of the leasehold." Maryland law provides that at any time after 5 years from the date of the creation of a ground *212 rent, the owner of the leasehold is entitled to redeem the ground rent by paying the reversioner an amount equal to the annual ground rent capitalized at 6 percent. Md. Ann. Code, art. 21, secs. 110, 111, and 112; Jones v. Magruder, 42 F. Supp. 193; Moran v. Hammersla, 52 A. 2d 727. In the event of a redemption of a Maryland ground rent, the owner of the ground rent customarily conveyed a fee simple title to the owner of the leasehold. However, the owner of the ground rent cannot compel the owner of the leasehold to redeem. In practice, a typical disposition of property in Maryland subject to a ground rent would follow the pattern illustrated by the following example: A builder owning a parcel of real estate (together with newly constructed improvements) having a fair market value of $10,000, agrees to sell it for a $2,000 cash payment, subject to a $7,000 mortgage and a $60 annual ground rent. Breaking the transaction down into its components in terms of Maryland property concepts, the "buyer" or owner of the leasehold has acquired a leasehold interest of 99 years' duration, renewable forever, in return for $2,000 cash plus a $7,000 mortgage. In addition, *213 he has agreed in effect to "rent" the reversion for $60 a year from the owner of the ground rent. After the expiration of 5 years, the owner of the leasehold is entitled to acquire the title in fee by paying the owner of the ground rent the amount of the annual ground rental capitalized at 6 percent, viz., $1,000. Such arrangements frequently have been found attractive to sellers of Maryland real estate because the ground rents may often be sold to investors at a profit. See Estate of Ralph W. Simmers, 23 T.C. 869, affd. 231 F. 2d 909; Welsh Homes, Inc., supra. It is apparent also from the record that the financing and conveyancing arrangement employed by Building and Realty Companies, which was founded upon a consistent utilization of the traditional Maryland ground rent, envisioned the realization of a profit not only upon the sale of the original ground rent to the purchase of residential property but also upon the future redemption or sale of such reversions. The record discloses that in most instances the capitalized value of the ground rents greatly exceeded any profit realized by the Requard partnerships from the creation of the ground *214 rents and the sale of the leasehold interests. The Requards quite clearly were looking to the sale or redemption of ground rents as a principal source of business profits. We are of the opinion that where the owner of such ground rents is engaged in homebuilding activities and has created such ground rents as an integral part of his business operations, such reversionary interests are so created for the purpose of realizing a profit and constitute part of the fruits of his business. It seems quite likely and is not negatived by this record that in the Baltimore area, a market existed for the sale of such ground rents by the reversioner at a profit. See Estate of Ralph W. Simmers, supra; and Welsh Homes, Inc., supra. Petitioners have offered no proof whatever tending to indicate that the ground rents created by the Building and Realty Companies were created for any purpose other than the eventual realization of a profit through the sale or redemption thereof. The situation here would appear to be similar to that which exists where property is rented subject to an option in the lessee to acquire title thereto. In *215 Pacific Homes v. United States, 129 F. Supp. 796, affd. 230 F. 2d 755, such a situation was involved. The question there arose as to whether profits realized from the sale of defense housing were properly reportable as ordinary income or capital gain. The District Court held that the profits should be reported by the seller as ordinary income, stating as follows at page 798: Out of the total of 347 houses built by Pacific Homes, Inc., 7 were immediately sold and 212 were immediately rented with options in the renters to buy. Such houses necessarily were held by the corporation from the very beginning for sale to the tenants, if the tenants decided to buy. The corporation voluntarily chose this method of doing business and they had no alternative but to sell when the options were exercised. It was therefore in the course of its ordinary business to sell to tenants who exercised their options to buy. * * * It can be seen that renting the houses with options in the tenants to purchase was itself an effective sales device. * * * From the foregoing, we conclude that petitioners have failed to sustain their burden of establishing that the 122 Maryland ground *216 rents here involved were not held by the Building Company and the Realty Company for sale in the ordinary course of their trade or business and consequently were not inventory items within the meaning of section 735(a)(2) of the 1954 Code. We are of the opinion that the creation and disposition of the Maryland ground rents in connection with the sale of newly constructed residential property located in Gray Haven subdivision was part and parcel of the business of the Building Company and the Realty Company to acquire, improve, and sell real estate to customers in the ordinary course of their business operations. We therefore must sustain respondent's determination that the distributed ground rents constitute inventory items in the hands of Thomas Requard at the time he sold them to Kathryn on December 30, 1956, and that under the provisions of section 735(a)(2) any gain realized from the disposition thereof is properly taxable as ordinary income. Issue 5. Basis of Second Investment Company Assets Findings of Fact Following the execution by Kathryn, Louis, and Thomas of their agreement of dissolution on December 30, 1956, Louis and Thomas executed a joint venture agreement on *217 January 1, 1957. The agreement stated that the name of the venture would be the Requard Investment Company (sometimes hereinafter referred to as Investment Company No. 3 or the third Investment Company). The agreement also stated that the purpose of the partnership was to "purchase and hold real estate as an investment and not to be held for improvement or development." The agreement further provided that the interests of the two partners would be Thomas, 57 percent, and Louis, 43 percent. Following the inheritance by Thomas of two-thirds of Julius Requard's partnership interest in the first Investment Company as of September 7, 1954, he did not increase his capital account on the books of the second Investment Company by the amount of appreciation over book value attributable to the value of Julius' interest. On December 31, 1956, Thomas and Louis debited the land account entitled Lynch Road Tract on the books of second Investment Company by the amount of $50,175.07, the amount paid Kathryn for her interest in Investment Company No. 2 over and above the book value of her partnership interest. The balance sheet of the third Investment Company as of January 1, 1957, listed the *218 value of the Lynch Road Tract at $148,337.26. This amount consisted of the book value of that portion of the Lynch Road property remaining in the second Investment Company (viz., $98,162.19) as of December 30, 1956, plus the $50,175.07 amount paid to Kathryn for her partnership interest in the third Investment Company. On its partnership returns for 1957, 1958, and 1959, Investment Company No. 3 stated that its partnership business was commenced on September 8, 1954. During the years 1957, 1958, and 1959, Thomas and Louis continued to engage as partners trading as the Requard Investment Company and did not terminate or dissolve the partnership prior to 1960. The third Investment Company continued to carry on exactly the same business operations as previously had been conducted by Kathryn, Thomas, and Louis in the second Investment Company. Throughout 1956 Kathryn Requard had less than a 50 percent interest in both the capital and profits of the Realty Company. The construction work that was commenced in 1956 by the Building Company in connection with erecting improvements on 84 lots designated Gray Haven Nos. 7 and 8 was continued without interruption into 1957. On December 31, 1956, Thomas *219 and Louis entered into a partnership agreement with respect to Building Company. The agreement provided that the "partnership shall begin as of January 1, 1957." On the partnership returns filed by Building Company for 1957, 1958, and 1959, it was stated that the business of that partnership had commenced on September 8, 1954. Kathryn Requard owned less than a 50 percent interest both in the capital and profits of Building Company throughout 1956. The books of Investment Company No. 3 contained entries dated May 31, 1957, reflecting the transfer out of that partnership of 84 lots of the Lynch Road Tract. The capital accounts of Louis and Thomas were debited to reflect withdrawal of such lots. Forty-two of the lots transferred from the third Investment Company during May 1957 were referred to by the Requards as Gray Haven No. 7. The other 42 lots transferred by Investment Company No. 3 at approximately the same time were referred to by the partners as Gray Haven No. 8. The 84 lots constituting Gray Haven Nos. 7 and 8 were contributed to the Building Company at an amount of $19,163.05. The foregoing amount was utilized by the Requards on the books of the third Investment Company *220 as the basis of 84 lots and included a portion of the amount paid by Louis and Thomas to Kathryn for her interest in the second Investment Company. Houses and other improvements were constructed on the above-described lots by the Building Company during 1957. During that year a total of 44 parcels with newly constructed improvements were sold, subject to Maryland ground rents. [14]
The Requard Building Company, in computing gain from the sale of the 44 parcels, used as its basis for the land disposed of a proportionate part of the $19,163.05. In his statutory notice of deficiency for 1957 the respondent decreased by $6,337.90 the above-mentioned $19,163.05 amount as an improper writeup of the basis of the 84 lots conveyed by the third Investment Company to the Building Company in 1957, and, with respect to the 44 lots disposed of in that year, disallowed $3,319.80 as an excessive basis figure. The respondent further determined an increase in petitioner's share of the distributive partnership income of *221 the Building Company in an amount reflecting the $3,319.80 decrease in the basis of the 44 lots sold in 1957. During 1958, the Requard Building Company sold 40 parcels together with the improvements thereon, subject to Maryland ground rents. [15]
In computing gain from the sale of the 40 lots sold in 1958, the Building Company used as its basis for the land disposed of a proportionate part of the above-mentioned $19,163.05. In his statutory notice of deficiency for 1958, the respondent decreased by $6,337.90 the $19,163.05 amount as an improper writeup of the basis of the 84 lots conveyed by the third Investment Company to the Building Company in 1957 and, with respect to the 40 lots disposed of in 1958, disallowed $3,018 as an excessive basis figure. The respondent further determined an increase in petitioner's share of the distributive partnership income of the Building Company in an amount reflecting the $3,018 decrease in the basis of the 40 lots sold in 1958. At no time during 1957, 1958, *222 and 1959 were any of the elections provided in section 734, 743, 754, or 761 of the 1954 Code in effect on behalf of Investment Company No. 3, the Building Company, and the J. H. Requard Realty Company, or any of the partners thereof. Opinion During May 1957, a total of 84 lots were transferred by Investment Company No. 3 to the Building Company. These 84 lots were designated by the Requards as Gray Haven Nos. 7 and 8. Houses were constructed on these lots by the Building Company during 1957. A total of 44 parcels with newly constructed improvements was sold to the public in 1957, each subject to a Maryland ground rent. The remaining 40 lots with improvements were sold in 1958. In computing the gain realized from the sale of these properties, the Building Company included in its basis the amount of $6,337.90 which resulted from a writeup of the basis of the Lynch Road Tract by the transferor (Investment Company No. 3) to reflect the additional amount paid to Kathryn by Louis and Thomas for her interest in that partnership. The parties are in agreement that the basis of the third Investment Company in the 84 lots carried over to the Building Company. The sole question presented *223 here is: What was the proper basis of the 84 lots located in Gray Haven Nos. 7 and 8 in the hands of Investment Company No. 3 immediately prior to the transfer to the Building Company? As we understand petitioners' brief, they contend that the second Requard Investment Company was dissolved and terminated on December 30, 1956, that all of its assets were distributed upon termination to the partners; that Kathryn sold her interest in such distributed assets to Louis and Thomas who, in turn, contributed such properties to a newly formed partnership likewise designated the Requard Investment Company as of January 1, 1957. Petitioners apparently therefore conclude that the basis of the property owned by Investment Company No. 3 would be the basis of the contributing partners in such property, and that the cost to Louis and Thomas of the remaining portion of the Lynch Road Tract necessarily would include the additional amount paid to Kathryn either in cash or in kind on December 30, 1956. See section 723, 1954 Code. We are unable to agree that the record herein supports the petitioners' contention that the second Investment Company was actually terminated for tax purposes or that the *224 transaction which occurred on December 30, 1956, actually constituted a liquidating distribution of the assets of Investment Company No. 2 followed by a sale of one partner's (Kathryn's) interest in these assets to the other two who thereupon purportedly formed a totally new partnership venture bearing the same name as the old. The transaction, as we view it, constituted simply a sale by Kathryn of her partnership interest in the second Investment Company to Louis and Thomas, and nothing else. Under Maryland law it appears that the second Investment Company was dissolved on December 30, 1956. [16] However, the petitioners have failed to establish that there was an actual termination of that venture within the meaning of section 708 of the 1954 Code. Section 708(b)(1) provides: Sec. 708(b) Termination. - (1) General Rule - For purposes of subsection (a), a partnership shall be considered as terminated only if - (A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or (B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership *225 capital and profits. It seems clear from the record that the newly formed Investment Company continued to carry on exactly the same business operations as had previously been conducted by Kathryn, Louis, and Thomas in the second Requard Investment Company. Petitioners have also failed to show that Kathryn disposed of 50 percent or more of the capital and profits of the second Investment Company on December 30, 1956. Finally, inasmuch as petitioners have stipulated that at no time during the years 1957, 1958, and 1959 were any of the elections provided by section 734, 743, 754, or 761 of the 1954 Code in effect on behalf of Investment Company No. 3 or any of its partners, they are without any basis for claiming the benefits of the basis adjustments available under either section 754 or 732(d) of the Code. In view of the foregoing, we hold that petitioners are not entitled to avail themselves of any increase or writeup in the basis of that portion of the Lynch Road property remaining in Investment Company No. 3 as of January 1, 1957. We therefore sustain the respondent's determinations in decreasing by $6,337.90 the amount *226 utilized by the Building Company as its basis in the 84 parcels disposed of in 1957 and 1958, and in increasing proportionately Thomas' share of the distributive partnership income of the Building Company for those years. Issue 6. Basis of Building Company Assets Findings of Fact On the partnership returns filed by the Requard Building Company for 1957, 1958, and 1959, depreciation deductions were claimed in the amounts of $1,911.41, $1,571.81, and $1,508.23, respectively. In his statutory notice of deficiency for 1957, 1958, and 1959, the respondent disallowed a portion of the depreciation deductions so claimed and increased petitioners' income in the amounts of $111.10, $96.64, and $51.39 for the respective years. The respondent's notice of deficiency for each of the above-mentioned years contained the following statement explaining the foregoing adjustments: (3) It is held that your income must be increased by $111.10 [for 1957; $96.64 for 1958; and $51.39 for 1959] to reflect the disallowance of depreciation, as computed below, claimed by The Requard Building Company on the writeup of certain partnership assets as a result of the purchase by the remaining partners *227 of the partnership interest formerly owned by Kathryn M. Requard: * * *
Opinion Petitioners' position here is similar to the contention they advanced under Issue 5, supra, viz., that, on December 30, 1956, there occurred a dissolution and termination of Requard Building Company followed by a liquidating distribution of assets to the three partners, a purchase by Louis and Thomas of Kathryn's interest in those assets, and a contribution thereof to a new partnership venture likewise designated the Requard Building Company. Petitioners therefore claim that because the basis of contributed partnership assets is the adjusted basis of the contributing partners under section 723 of the 1954 Code, the basis of the Building Company assets should properly be stepped up to reflect the actual investment made by Louis and Thomas. Here, as in Issue 5, supra, petitioners have failed to sustain their burden of establishing that the original Building Company was terminated within the meaning of section 708 of the 1954 Code or that a distribution of its assets actually took place. The record here does not indicate that Kathryn ever acquired or disposed of an interest in the capital and profits *228 of the Building Company in a proportion as high as 50 percent or higher. Nor is there any proof tending to show that the Building Company did not continue any part of its "business, financial operation, or venture" within the meaning of section 708 during the years here involved. On her individual income tax return for 1956, Kathryn stated that she had sold her "partnership interest" in the Building Company, and we have so found. Further, the parties have stipulated that petitioners made no election under section 734, 743, 754, or 761 of the 1954 Code to take advantage of the basis adjusting provision contained in sections 754 and 732(d). In the absence of evidence of petitioners' entitlement to avail themselves of one of the above-mentioned sections of the Code, we must leave the parties where we find them and the respondent's determination of the basis of the Building Company's assets for purposes of depreciation for 1957, 1958, and 1959 must be sustained. Issue 7. Stamford Land Transaction Findings of Fact On November 25, 1957, Thomas and Louis Requard, trading as the Requard Investment Company (No. 3), executed a contract with the Stamford Land Company. The agreement *229 provided, in pertinent part, as follows: (1) The Requards agreed to convey in fee simple 383 lots located in the Lynch Road Tract to the Stamford Land Company. (2) The Requards agreed to create perpetual ground rents on 190 additional lots located in the Lynch Road Tract. (3) The annual ground rents to be created on the 190 lots were to be in the amount of either $90 or $96, depending on the size and location of each lot. The ground rents to be created on the 190 lots were to be effective as of January 1, 1958. (4) The Requards agreed to enter into a 99-year lease, renewable forever at the option of the lessee with a straw party, Wheeler Holding, Inc. (5) The Requards agreed at a specified settlement date to convey to Stamford the leasehold interest in the 190 lots for a stated consideration $5of. (6) The agreement further provided that "no such ground rent shall accrue with respect to the years 1958 and 1959 on any lot until the date on which footing shall be poured for the construction of a building on said lot." (7) The sale by the Requards of 383 lots in fee simple to Stamford was to be made in consideration of $110,500, $60,500 of which was to be paid in cash and the balance *230 was to be represented by a purchase money mortgage in the amount of $50,000. (8) The above-mentioned purchase money mortgage was to encumber all of the land conveyed in fee simple to Stamford, except for a small portion thereof, and bore no interest. The mortgage was to be payable 3 years from the date of the contract. (9) At the time of settlement Stamford was required to pay the Requards $49,662.50 to reimburse them for a like sum of money which they had deposited with Baltimore County under a public works agreement with respect to Section 2 of Gray Haven Subdivision. (10) The specified settlement date was December 20, 1957. That portion of the Lynch Road Tract remaining in the third Investment Company immediately prior to the execution of the above-mentioned contract with the Stamford Land Company had a fair market value on November 25, 1957, of $7,250 per acre. On December 20, 1957, Louis and Thomas entered into a lease with Wheeler Holding, Inc., with respect to the 190 lots described in the contract with Stamford Land Company. The lease executed on that date was for a period of 99 years, renewable at the option of the lessee. Ground rents in the amount of $96 per year were *231 created on 76 lots and ground rents in the amount of $90 per year were created on 114 lots. The total annual ground rental resulting from the creation of the foregoing 190 ground rents was $17,556. The total capitalized value of the above-mentioned 190 ground rents created pursuant to the terms of the contract with Stamford Land Company was $292,600. On December 20, 1957, Wheeler Holding, Inc., conveyed to the Stamford Land Company 190 lots pursuant to the terms of the contract executed November 25, 1957, subject to the payment of annual ground rents. Louis and Thomas Requard on December 20, 1957, deeded to Stamford Land Company the fee simple title to Sections 3 and 4, Gray Haven. On December 20, 1957, a mortgage instrument in the amount of $50,000 was executed by Stamford Land Company and the Requards in pursuance of the contract executed on November 25, 1957. On December 20, 1957, Louis and Thomas and the Stamford Land Company executed a deed of trust which provided that all of Section 3, Gray Haven (except for a small number of lots), and all of Section 4 of Gray Haven were to be placed in trust "so that the improvements thereof should be postponed in the manner and to *232 the extent hereinafter provided, to the erection of dwelling houses on the said leasehold lots [viz., the 190 lots subject to ground rents]." The deed of trust further provided, in pertinent part, as follows: (1) Upon the completion by Stamford of dwelling houses to be constructed on 112 of the 190 lots subject to ground rental, the trustees under the deed of trust were obligated to reconvey to Stamford 112 of the lots situated in Section 3, Gray Haven. (2) Upon completion by Stamford Land Company of the remaining 78 lots comprising the balance of the 190 lots encumbered by ground rents, the balance of the 383 lots located in Sections 3 and 4, Gray Haven, were to be released from the trust and reconveyed to Stamford. (3) If, after the expiration of a period of 5 years from December 20, 1957, dwelling houses were not completed to the extent required on the 190 lots encumbered by ground rents, the Stamford Land Company could either pay the Requards an amount equal to $800 per lot for each lot containing an unfinished dwelling house or Stamford could pay the Requards $1,500 for each such lot and the Requards would be obligated to convey fee simple title to Stamford upon such payment. *233 (4) In the event the Stamford Land Company, after 5 years from December 20, 1957, elected to pay either $800 per lot or $1,500 per lot to the Requards under the above-mentioned provisions, the trustees were then required to release all the land under the deed of trust and convey it to the Stamford Land Company. (5) In the event the Stamford Land Company failed to pay the Requards the sums of money provided under the above-described provisions of the deed of trust, the trustees were required to sell all or part of the property still subject to the trust at public auction and to pay the Requards $800 per lot for each lot in the group of 190 lots subject to ground rents which contained an unfinished dwelling house. All of the instruments dated December 20, 1957, relating to the Stamford land transaction as well as the contract executed November 25, 1957, recognize that the rights and obligations created thereunder were to be freely assignable by both Stamford and the Requards. On November 27, 1957, the fair market value of the undeveloped land in the Lynch Road Tract was $7,250 per acre. As of August 3, 1959, the Stamford Land Company had completed the construction of dwelling houses *234 on 112 lots located in the group of 190 lots which under the agreement executed November 25, 1957, were transferred to Stamford subject to ground rents. As of October 26, 1960, Stamford had completed construction of the remaining 78 dwellings located in the group of 190 lots described above. As of October 26, 1960, the balance of the land held by the trustees was reconveyed to the Stamford Land Company. The Requards received from Stamford the $49,662.50 amount pursuant to the terms of the contract of November 25, 1957. The Stamford Land Company would not have been interested in constructing leasehold improvements on the 190 lots involved in the above-described transaction under the terms provided in the contract of November 25, 1957, unless the entire 573 lots were dealt with as a "package" deal under the terms and conditions set forth in that contract. Both the Stamford Land Company and Investment Company No. 3 received full consideration in exchange for their obligations under the contract of November 25, 1957, and the deed of trust of December 20, 1957. In the development of unimproved land in the Dundalk, Maryland, area during the years here involved, it was customary for *235 the owner of land who engages a building contractor to construct leasehold improvements to contribute to the cost of the improvements. However, in connection with the arrangement entered into by the third Investment Company and Stamford Land Company, Stamford undertook to construct all of the streets and other improvements on the 190 lots here involved without any contribution whatsoever by Investment Company No. 3. On the partnership return filed by the third Investment Company for 1957, the partners reported a total consideration received in return for the conveyance of building lots to the Stamford Land Company of $110,537.56. In his statutory notices of deficiency for 1957, 1958, and 1959, the respondent determined that in addition to the abovestated consideration of $110,537.56, the Requard Investment Company No. 3 received other property having a fair market value of $275,488 as a part of the total amount realized for the sale of building lots to the Stamford Land Company. The respondent's notices explained that the abovedetermined amount represented the fair market value of the 190 ground rents created by Louis and Thomas in 1957, which was determined to be $275,488 as a *236 result of the allowance of a discount from the full capitalized value of the ground rents ($292,600) to reflect the fact that the annual ground rents were not to become effective until January 1, 1958. In the alternative, the respondent has determined that the third Investment Company in 1957 received total consideration in the amount of $242,756.89 as the amount realized from the sale of building lots to the Stamford Land Company rather than the amount of $110,537.56 as reported by the Requards. The above determinations were made in the alternative for the years 1957, 1958, and 1959. Opinion As we understand the respondent's brief, he has abandoned the primary position contained in the statutory notice of deficiency with respect to the amount realized by petitioners J. Thomas and Louis Requard as the result of the sale of building lots to the Stamford Land Company in 1957. The respondent contends on brief that Investment Company No. 3 received total consideration in the amount of $242,756.89 from the Stamford Land Company in 1957 (which is taxable in that year or in 1958 or 1959) rather than the amount of $110,537.56 which was reported by J. Thomas and Louis on the partnership *237 return of the third Investment Company. Petitioners contend that $110,537.56 constituted the full consideration realized under the contract of November 25, 1957, and, further, that if any additional consideration were realized thereunder, it would not be taxable during the years in issue. We agree with the latter contention. The respondent's position with respect to this issue is premised upon the proposition that the $110,537.56 amount which is represented by the contract executed November 25, 1957, as constituting the entire consideration for the sale of 383 building lots to the Stamford Land Company, actually represents only a portion of the true value of those lots. If allocated proportionally among the 383 lots conveyed by the Requard Investment Company in fee simple to Stamford, the total consideration specified in the contract amounts to approximately $3,300 per acre. The record contains convincing evidence that the 383 lots in question actually had a fair market value on November 25, 1957, of at least $7,250 per acre and we have so found. The respondent argues that the Requards were not in the business of giving away valuable real estate and that they therefore must have *238 received additional consideration for the 383 lots which apparently were undervalued by the parties to the November 25, 1957, contract. The respondent claims to have found such additional consideration to be present in the overall transaction in the form of the obligations of the Stamford Land Company to pay annual ground rents with respect to the 190 lots and also to erect leasehold improvements thereon. The respondent has valued these contractual obligations imposed upon Stamford by assigning thereto a portion of the capitalized value (subject to certain discounts and adjustments) of the 190 Maryland ground rents created on the above-described 190 lots. He accordingly claims that in addition to cash in the amount of $60,500 and the purchase money mortgage in the face amount of $50,000, petitioner and Louis Requard also received valuable contractual rights in 1957 which had an ascertainable fair market value in that year. We find that the respondent's argument on this issue to be somewhat nebulous and difficult to grasp. Our principal difficulty with his contention, however, is that it appears to contravene the holding of this Court in *239 Estate of Ralph W. Simmers, supra. In that case, the taxpayer's decedent, who was engaged in the business of constructing and selling houses in the vicinity of Baltimore, Maryland, acquired in fee simple a parcel of unimproved real estate. Upon completion of the construction of dwelling houses on the newly subdivided lots, the taxpayer's decedent executed a contract in the form of a lease conveying the lots and the improvements thereon for a term of 99 years, renewable forever, and providing a specified annual ground rental. Simultaneously with the conveyance of the ground rent to a purchaser of the real estate, the purchaser executed a mortgage on the premises to cover the unpaid portion of the purchase price of the house. Under the laws of the State of Maryland, the ground rents were redeemable at the option of the buyers (lessees) after the expiration of 5 years upon the payment to the reversioner of the amount of the annual ground rent capitalized at 6 percent. The respondent there took the position that the transaction amounted to a sale or exchange of the lot and that the reversioner had, in effect, acquired a mortgage with an ascertainable fair market value equal *240 to the capitalized value of the ground rent. The Commissioner accordingly determined that the capitalized value of the ground rents there in question constituted taxable income to the owner thereof in the year the ground rents were created. After an examination of the nature of ground rents under Maryland law, we found that they essentially amounted to no more than leases. Inasmuch as title to the property was still retained by the owners of the ground rents, we there held that no taxable event had occurred at the time the ground rents were created. Our holding on the issue involved in Estate of Ralph W. Simmers, supra, subsequently was reaffirmed in Welsh Homes, Inc., supra. We are of the opinion that the respondent's contention here does not differ materially from the position he adopted in Estate of Ralph W. Simmers, supra. Although the transaction here presented was a much more complicated arrangement than those involved in Estate of Ralph W. Simmers, supra, and although the reasons underlying the creation of the 190 ground rents here in question differed from the considerations which motivated the parties to create ground *241 rents utilized in the Simmers case, it nevertheless appears to us that the respondent is attempting here under a different guise to accomplish the same result as was disapproved in both the Simmers and Welsh Homes cases. We agree with the respondent that the reason the Stamford Land Company was willing to acquire merely the leasehold interests in 190 unimproved lots and to pay annual ground rentals thereon, as well as to construct improvements on the land, was the fact that it thereby was able to strike an advantageous bargain with Investment Company No. 3 with regard to the group of 383 lots. It appears that Stamford's contractual obligations to build houses and to pay annual ground rents upon the 190 lots constituted sufficient consideration in the eyes of Louis and Thomas Requard to persuade them to convey title to the 383 lots to Stamford at a very favorable price. Nevertheless, the ground rents created by petitioner and his partner in 1957 were still Maryland ground rents within the scope of our decisions in Estate of Ralph W. Simmers, supra, and *242 Welsh Homes, Inc., supra. These leases were not converted into something other than ground rents by reason of being created as partial consideration to the reversioners for the sale of other property not so encumbered. Since the respondent's position regards the additional consideration received for the 383 lots as being reflected by the capitalized value of the 190 ground rents in question, and inasmuch as the Commissioner on brief contends that petitioner should be taxed with a portion of the capitalized value of such ground rents in the year of creation, we must deny his contention as being inconsistent with our holdings in Estate of Ralph W. Simmers, supra, and Welsh Homes, Inc., supra. In the light of the Simmers and Welsh Homes decisions, inasmuch as the contractual obligations of the Stamford Land Company are represented by ground rents, we are of the opinion that no part of the capitalized value thereof is properly taxable to the owner of the ground rents in either 1958 or 1959. As we understand the import of the Simmers and Welsh Homes decisions, no taxable event occurs until the owner of the ground rents sells his reversionary interests *243 or the owner of the leasehold interest elects to redeem the ground rents. The taxation of income to the owner of a Maryland ground rent, under those cases, appears to be deferred until the time of sale or redemption. The character of the income so realized (although not recognized in the years here involved), however, in the instant case would appear to have been fixed on December 20, 1957 (or not later than January 1, 1958), when 190 such ground rents were created and the leasehold interests, together with the fee simple titles to 383 additional lots, were conveyed by the third Investment Company in the ordinary course of its trade or business as our opinion under Issue 9, infra, indicates. Arrowsmith v. Commissioner, 344 U.S. 6. We accordingly hold that Requard Investment Company No. 3 received no more than $110,537.56 by way of taxable consideration in 1957, and received no additional recognized income in 1958 or 1959 as a result of the transaction consummated with the Stamford Land Company. We therefore sustain the petitioners on this issue. Issue 8. Basis of 383 Lots Sold to Stamford Land Company Findings of Fact The Requard Investment Company (No. 3) on *244 its partnership return for 1957 reported long-term capital gain in the amount of $14,668.61 resulting from the sale of 383 lots to the Stamford Land Company in 1957. The Investment Company reported its basis in such lots as $95,868.95 and the amount realized as $110,537.56. The $95,868.95 basis amount which was disclosed on the 1957 partnership return of the third Investment Company as representing the basis of the 383 lots sold to the Stamford Land Company was computed as follows: Land cost (including a writeup of
$28,897.83 above book value result-
ing from the purchase of Kathryn's
partnership interest)
$85,324.74
Engineering cost - Section II
6,438.11
"Sale of land" expense
485.55
"Sale of land" expense
3,500.00
Revenue stamps
121.55
Total basis
$95,868.95
In his notice of deficiency for 1957 the respondent decreased by $28,897.83 the $85,324.74 amount utilized by Investment Company No. 3 as the basis of the 383 lots sold to the Stamford Land Company. The respondent also determined an increase in petitioner's share of the distributive partnership income of the third Investment Company in an amount reflecting the $28,897.83 decrease determined *245 in the basis of the 383 lots sold in 1957. Opinion The Requard Investment Company (No. 3) reported long-term capital gain resulting from the sale of the 383 lots to the Stamford Land Company in 1957. In computing the gain realized from the sale on its partnership return for 1957 the Investment Company claimed a basis in the lots of $85,324.74, which included $28,897.83 representing a writeup of the basis of the lots which petitioners contend was attributable to the purchase of Kathryn's partnership interest by Louis and Thomas Requard. The contentions of the parties appear to be the same as those advanced under Issue 5, supra, with respect to the transfer by Investment Company No. 3 of 84 lots in the Lynch Road Tract to the Building Company. For the reasons set forth in our opinion under Issue 5, supra, we are of the opinion that Investment Company No. 3 was not entitled to adjust the basis of its assets as a result of the transaction whereby Kathryn Requard sold her interest in that partnership to Louis and Thomas on December 31, 1956. Furthermore, here section 732(d) necessarily would be inapplicable to the transaction in question because the 383 lots concededly were sold to *246 the Stamford Land Company and cannot by any imaginative exercise be regarded as having been distributed to Louis and Thomas. In the absence of evidence tending to show error in the basis amount determined by the respondent, we must leave the parties where we find them and his determination is sustained. Issue 9. Character of Gain Realized From Sale of 383 Lots to the Stamford Land Co. Opinion The respondent has determined that the gain realized by Investment Company No. 3 as the result of the disposition of 383 lots to the Stamford Land Company in 1957 constituted ordinary income. The petitioners call to our attention the facts that the original partnership agreement executed October 1, 1951, under which the first Investment Company was formed and the agreement executed January 1, 1957, both expressly state that the purpose of the firm was "to purchase real estate as an investment and not to be held for improvement, development, subdivision or resale in individual lots." They therefore conclude that the purpose of the Requards in disposing of a sizable portion (consisting of 383 lots) of the Lynch Road Tract in a single transaction indicates their purpose to acquire and *247 hold such property merely as an investment. We are of the opinion, however, as we have set forth in more detail in our opinions in Issues 1 and 4, supra, that in 1954 the Requards changed their purpose with respect to the Lynch Road property from holding the tract merely as an investment to subdividing it into individual building lots, erecting improvements thereon, and selling the lots with newly constructed dwelling houses to individual buyers. The Requards erected improvements on a number of such lots located in Gray Haven project Nos. 7 and 8 prior to the transfer of such property. As we have explained in our opinion under Issues 1 and 4, supra, we believe the Requards during the years 1954, 1955, 1956, and 1957 demonstrated by a clear course of conduct that they were engaged in those years in the business of subdividing real estate and selling building lots either improved or unimproved through the Requard Building Company, the Requard Realty Company, Requard Homes Company, or the Requard Investment Companies. Of the original Lynch Road Tract which was eventually subdivided into approximately 1,022 building lots, 777 of such building lots, all of which were held by the first *248 Investment Company originally, eventually were disposed of to a variety of purchasers either with or without improvements over a period of approximately 3 1/2 years. Such sales transactions, as well as the disposition of the 383 lots to Stamford Land Company here in question, all occurred as part of a systematic plan for the subdivision and development of the Lynch Road Tract. There is nothing in the record to indicate that the 383 lots here involved were held by the third Investment Company in a capacity different from the other land owned by the Requards and sold by them through their various corporate and partnership entities. For the foregoing reasons, as well as for the reasons set forth in our opinion under Issues 1 and 4, supra, we are of the opinion that the petitioners have failed by a preponderance of evidence to establish that the sale of 383 lots to the Stamford Land Company in 1957 constituted merely the liquidation of an investment. As we view the record, such property was held for sale by petitioners in Investment Company No. 3 in the ordinary course of the trade or business of that partnership and the respondent's determination that the gain resulting from the disposition *249 thereof during 1957 constitutes ordinary income is sustained. [17]
Issue 10. Characterization of Gain From the Sale of Six Lots to the Episcopal Church *250 Findings of Fact On December 27, 1957, Thomas and Louis Requard, trading as Requard Investment Company (No. 3), sold a parcel of land consisting of six building lots located in the Lynch Road Tract to the Convention of the Protestant Episcopal Church Diocese of Maryland. The sale price of this parcel of land was $12,000. On its partnership income tax return for 1957, Requard Investment Company No. 3 reported long-term capital gain in the amount of $7,627.12 resulting from the sale of the above-mentioned parcel of land. In his notice of deficiency, the respondent has determined that the gains so realized constituted ordinary income. Opinion Petitioners claim that the sale of the six building lots by the third Investment Company to the Episcopal Church in 1957 represented merely the liquidation of an investment and consequently resulted in the realization of long-term capital gain. For reasons which we feel were amply set forth in our opinions under Issues 1, 4, and 8, supra, we are of the opinion that this parcel of land also was held by Investment Company No. 3 for sale to customers in the ordinary course of business and in the absence of clear and convincing proof to the *251 contrary, we sustain the respondent's determination. Issue 11. Basis of Six Lots Sold to the Episcopal Church Findings of Fact On the partnership income tax return filed by the Requard Investment Company (No. 3) for 1957, the cost of the parcel of land consisting of six building lots sold to the Episcopal Church on December 27, 1957, was reported as $4,336.68. This amount included a writeup of $452.71 above the book value of the lots resulting from the purchase by Louis and Thomas Requard of Kathryn Requard's partnership interest in the firm at the close of 1956. In his notice of deficiency for 1957 respondent decreased by $452.71 the $4,336.68 amount utilized by the third Investment Company as the basis of the six lots sold to the Episcopal Church. The respondent also determined an increase in the partners' shares of distributive partnership income of Investment Company No. 3 in an amount reflecting the $452.71 decrease determined in the basis of the six lots disposed of on December 27, 1957. Opinion For reasons which we have explained in detail in our opinions under Issues 5 and 8, supra, we are unable to accept the petitioners' contention that they were entitled to *252 an upward adjustment in the basis of the six lots sold to the Episcopal Church in 1957. In the absence of evidence tending to show error in the respondent's determination of the basis of those lots, we hold that his determination is sustained. Issue 12. Thomas Requard's Basis in Land Sold by Requard Investment Company in 1957 Findings of Fact On the partnership return filed by Investment Company (No. 3) for 1957, Thomas Requard's share of the long-term capital gain shown as resulting from the sale of 383 lots to the Stamford Land Company and the sale of six lots to the Episcopal Church was reported in the amount of $12,740.43. On their income tax return for 1957, petitioners J. Thomas and Eleanor F. Requard reported a net loss resulting from the Stamford Land Company and the Episcopal Church transactions, computed as follows: Sales price
$12,740.43
Cost
14,163.49 [1]
Loss
($ 1,423.06)
In his notice of deficiency for 1957 the respondent disallowed the amount utilized by them as the basis for the land disposed of by Investment Company No. 3 in the two above-mentioned transactions. The respondent *253 also increased petitioners' distributive partnership income from the third Investment Company so as to reflect the foregoing adjustments. Opinion In their petition, petitioners claim an additional increase to the basis claimed by them on their 1957 return as being applicable to J. Thomas' share of the gain realized by Investment Company No. 3 from the Stamford and Episcopal Church sales. The additional increase to basis claimed in the petition is in the amount of $17,504.22 and in addition to the basis of $14,163.49 claimed on the 1957 return. Both the $17,504.22 and the $14,163.49 amounts are claimed by J. Thomas as resulting from his inheritance of two-thirds of Julius Requard's partnership interest in the first Investment Company. Petitioners claim that Thomas Requard is entitled to increase his basis in his proportionate share of the 383 lots sold by the third Investment Company to Stamford Land Company in 1957 and the six lots sold to the Episcopal Church in that year. Petitioners appear to contend Thomas is entitled to adjust the basis of his interest in the Investment Company assets as the result of his inheritance in 1954 of a portion of Julius' partnership interest in *254 the first Investment Company. Inasmuch as the parties have stipulated that at no time during 1957 were any of the basis adjustment elections available under section 734, 743, 754, or 761 of the 1954 Code in effect on behalf of the third Investment Company, we are unable to conclude that petitioners have demonstrated any ground whatsoever for claiming the benefits of an upward adjustment in the basis of the proportionate part of the Investment Company assets owned by Thomas Requard. Further, since the transactions involved sales by Investment Company No. 3 of land during 1957 and obviously did not involve a distribution of partnership property, the election provided under section 732(d) of the Code clearly would be inapplicable to the situation before us. We therefore hold that the respondent's determination relating to Thomas Requard's proportionate part of the basis of the partnership assets must be sustained. Issue 13. Basis Adjustment to Building Company Assets Sold in 1958 Findings of Fact The Gray Manor Supply Company originally was owned by the Requard Realty Company, but the assets of the Supply Company were transferred to the Requard Building Company pursuant to the *255 agreement executed by Kathryn, Thomas, and Louis Requard on January 3, 1956. The Requard Building Company wrote up the basis of the assets of the Gray Manor Supply Company on its books and records by the amount of $3,534.81 to reflect the retirement of Kathryn Requard from the partnership and the sale of her partnership interest to Louis and Thomas Requard. During 1958 the Requard Building Company disposed of the Gray Manor Supply Company assets, together with certain other assets. On its partnership return for 1958, the Building Company reported long-term capital gain in the amount of $39,927.92 resulting from the sale of such assets. In his notice of deficiency the respondent disallowed the above-described writeup in the basis of certain Building Company assets and also increased the gain reported by the Building Company on its partnership return for 1958 resulting from the sale of those assets in that year. The respondent also increased by $883.71 petitioners' share of long-term capital gain resulting from the sale by Requard Building Company of certain assets. During 1958 the respondent's examining agent audited the estate tax return filed by the estate of Julius Requard *256 and increased the value of his partnership interest in the Requard Realty Company by $15,000 above the amount reported in the estate tax return. Of the $15,000 increase in the value of Julius' partnership interest in the Realty Company, $3,335.79 was applied on the books of that partnership to the assets of that division of the business known as Gray Manor Supply Company. Thomas Requard inherited two-thirds of the foregoing amount applied to the assets of Gray Manor Supply Company or $2,223.86. Petitioners J. Thomas and Eleanor F. Requard on their income tax return for 1958 computed their portion of the gain resulting from the sale of certain Building Company assets as follows: Petitioners' share of capital gain aris-
ing in Building Company
$19,963.96
Special basis adjustment applicable to
assets sold
2,223.86
Long-term capital gain
$17,740.10
In his notice of deficiency for 1958 the respondent made the following additional adjustment: (d) Special Basis adjustment disallowed (Long-term capital gain increased) $1,111.93 You claimed a special basis adjustment in the amount of $2,223.86 with respect to the sale of assets by the partnership of The *257 Requard Building Company. The partnership has not elected to use such special basis adjustment. The two year period allowed to the partner to elect to use such adjustment has expired. The claimed special basis adjustment is therefore disallowed. Opinion During 1958 Requard Building Company disposed of certain assets comprising that division of its business known as Gray Manor Supply Company. The Gray Manor Supply Company originally was a part of the Requard Realty Company and the assets of the Supply Company were transferred to Requard Building Company pursuant to the agreement executed by Kathryn, Thomas, and Louis Requard on January 3, 1956. The issue with which we are concerned relates to the computation of the basis of such assets. Two separate adjustments to the basis of the assets sold by the Building Company in 1958 are involved here: (1) A writeup by the Building Company on its books in the amount of $3,534.81 to reflect the sale by Kathryn Requard of her interest to Louis and Thomas on December 31, 1956, and (2) a writeup by petitioners J. Thomas and Eleanor F. Requard on their income tax return for 1958 in the amount of $2,223.86 claimed as an increase in the basis *258 of Thomas Requard's proportionate share of Realty Company assets resulting from an increase in the estate tax valuation of Julius' partnership interest. The respondent disallowed both of the above-described basis adjustments. We are in agreement with his determinations. The parties have stipulated that neither petitioners nor the Requard Realty Company, nor the Requard Building Company executed any of the elections available under section 734, 743, 754, or 761 of the Code for 1958. Further, we have concluded that under Issue 6, supra, the Building Company was not terminated on December 31, 1956. Finally, since no distribution of Building Company assets was made to Thomas Requard, section 732(d) of the Code is clearly inapplicable. We here sustain the respondent's determinations. Issue 14. Basis of Investment Company in Two Waterfront Lots Findings of Fact On February 3, 1958, Louis and Thomas Requard conveyed title to a parcel of land to the Stamford Land Company. This parcel was described by the Requards on their books and records as "2 waterfront lots." These lots were conveyed to Stamford Land Company as consideration for the prepayment of the $50,000 mortgage connected *259 with the Stamford Land transaction heretofore described under Issue 7, supra. The $50,000 amount was paid by Stamford by July 1958. On its partnership return for 1958 Investment Company No. 3 claimed the deduction of the cost of the two waterfront lots which included a writeup in the amount of $150.90 (resulting from the sale of Kathryn's interest in the second Investment Company) as an "interest expense." In his notice of deficiency for 1958 the respondent disallowed the $150.90 writeup in the cost of the two waterfront lots with the following explanation: The income of The Requard Investment Company for 1958 has been increased in the amount of $150.90 to reflect the reduction of basis in that amount, resulting from the disallowance of a writeup of $75.45 per lot for two lots conveyed by The Requard Investment Company to Stamford Land Company as consideration for Stamford Land Company's accelerating the payment of its mortgage liability to The Requard Investment Company. The respondent also increased petitioners' distributive share of the partnership income of the Building Company so as to reflect the foregoing decrease in the basis of the two waterfront lots. Opinion *260 For reasons which we have already explained in considerable detail in our opinion under Issue 5, supra, as well as in discussing other issues involved in this case, we again hold that petitioners have failed to establish that they are entitled to increase the basis of assets owned by Investment Company No. 3. They offered no proof indicating any reason for disturbing the respondent's determination of the basis of such assets which we here sustain. Issue 15. Sale of Greenbriar Lots Findings of Fact On April 3, 1945, petitioners Louis T. Requard and Clara F. Requard acquired a tract of land consisting of approximately 5 acres located in Baltimore County, Maryland. A dwelling house was located on the tract which was used by petitioners during the years here pertinent as their residence. The initial cost to petitioners of the land and dwelling house was $11,625. During 1955 petitioners had approximately 4 acres of the above-described tract of land platted, cleared of timber, and subdivided into lots. They also undertook to install water and sewage lines, roads, curbs, and other engineering services. The total cost of these improvements to the land was $17,193.53. Petitioners *261 referred to this project as the Greenbriar lots. The $17,193.52 amount expended for improvements on the Greenbriar lots was charged against Louis Requard's capital account in the Requard Realty Company. Louis Requard filed a plat in the records of the Baltimore County Land Office with respect to the Greenbriar lots. A total of 17 lots were laid out on the original plat filed by petitioner but it was later amended by a subsequent plat which disclosed only 16 lots. During 1956 and 1957 Louis Requard sold portions of the Greenbriar lots as follows: September 11, 1956, 1 lot sold to Kenneth Deinlien. November 10, 1956, 1 lot sold to Michael Dougherty. December 12, 1956, 1 lot sold to Michael Dougherty. December 12, 1956, 10 lots sold to Allen P. Miller & Son, Inc. March 29, 1957, 1 lot sold to Michael Dougherty. On their Federal income tax returns for 1956 and 1957 petitioners reported longterm capital gain resulting from the sale of the Greenbriar lots, utilizing the installment method of reporting. In his statutory notice of deficiency for 1956 and 1957, respondent determined that the gain realized by petitioners from the sale of the Greenbriar lots constituted ordinary *262 income. [18]
Opinion Petitioners have taken the position that the sale of the Greenbriar lots during 1956 and 1957 merely represented the liquidation of an investment. The respondent has determined that the disposition of such lots resulted in the realization of ordinary income from property held by petitioners in the ordinary course of business. Petitioners at the trial have offered no explanation whatever of Louis Requard's purpose in acquiring the 5-acre tract in 1945 and have not sought to explain on the record his reasons for subdividing 4 acres of the tract in 1955 and selling several of the lots during 1956 and 1957. It would appear from the record that if Louis Requard originally had intended to acquire the 5-acre tract either as a personal residence or for investment purposes, he altered his purpose in 1955 and embarked upon a course *263 of subdividing 4 of the acres into individual lots, adding costly improvements thereto, and engaging in the business of selling real estate. In the absence of record evidence that the purpose of petitioner in disposing of certain of the Greenbriar lots in 1956 and 1957 was other than that of conducting a trade or business, we must sustain respondent's determination that such lots were held for sale in the ordinary course of business and that the income derived therefrom constitutes ordinary income. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Estate of Kathryn M. Requard, E. Taylor Boden, Herbert C. Moore, and Eskin T. Boden, Jr., Co-Executors, Docket No. 5210-63; and Louis T. and Clara F. Requard, Docket No. 5211-63.↩
2. The apparent reason for the agreement of October 19, 1954, forming a second Requard Investment Company was to create a successor partnership to the Requard Investment Company which had been formed on October 1, 1951, and which was dissolved upon the death of Julius. Md. Ann. Code, art. 73A, sec. 31(4) (1951). The agreement forming the new Requard Investment Company also served to adjust the profit and loss ratios among the three remaining partners.↩
1. The 81-acre parcel sold on March 9, 1953, was not a part of the Lynch Road Tract. The location of this parcel is not disclosed by the record. ↩
2. The land sold to the Board of Education for a school site was a 20-acre parcel consisting of 6.7 acres from the Lynch Road Tract and the balance from the Bear Creek Tract. ↩
3. The.8-acre parcel originally was part of the Bear Creek Tract but after October 31, 1954, was regarded by the Requards as part of the Lynch Road Tract. ↩
4. Of the 573 lots sold to the Stamford Land Co., 383 were conveyed in fee and 190 were leasehold conveyances, subject to ground rents.↩
3. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167↩, or real property used in his trade or business;
4. SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE. In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751↩ (relating to unrealized receivables and inventory items which have appreciated substantially in value).
5. Petitioner contends that section 1014(a) of the 1954 Code entitles it to so adjust the basis of inherited property. That section, which retains the substance of section 113(a)(5) of the 1939 Code, provides: SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT. (a) In General. - Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939↩ where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections.
6. The approximate percentages of partnership capital were computed as follows: Kathryn Requard: Value of partnership inter-
est (9/7/54)
$134,315.35
Value of 1/3 of Julius' inter-
est (12/23/55)
44,771.78
$179,087.13 = 33%
J. Thomas Requard: Value of partnership inter-
est (9/7/54)
$134,315.35
Value of 2/3 of Julius' inter-
est (12/23/55)
89,543.56
$223,858.91 = 42%
Louis Requard: Value of partnership inter-
est (9/7/54)
$134,315.35 = 25%
Although the September 7, 1954, valuation figures do not reflect the withdrawal of 70 lots from Investment Company No. 2 during 1954 and 1955, and do not reflect any increase in property values as of December 23, 1955, such adjustments, if made, would not affect the proportionate interests of the partners. ↩
7. The approximate percentages of partnership capital were computed as follows: ↩
Kathryn Requard: Book value of partnership
interest (12/31/55)
$24,379.76
Book value of 1/3 of Julius'
interest (9/7/54)
9,105.10
Book value of partnership
interest (1/1/56)
$33,484.86 = 33%
J. Thomas Requard: Book value of partnership
interest (12/31/55)
$24,075.79
Book value of 2/3 of Julius'
interest (9/7/54)
18,210.21
Book value of partnership
interest (1/1/56)
$42,286.00 = 42%
Louis Requard: Book value of partnership
interest (12/31/55)
$24,227.78 = 25%
8. If, as we believe to be the case, the 70 building lots disposed of by the Investment Company were worth approximately $640 per lot, Kathryn might have received as much as $5,000, or approximately 22 percent of their value, assuming she had no basis therein (although the record shows she in fact did). Adding this figure to $72,037.12 received on December 31, 1956, produces a total consideration of $77,037.12. ↩
9. The $179,087.13 figure employed herein has not been adjusted to reflect intervening increases in land values which may well have occurred during the period of rising property values in the Dundalk, Maryland, area. Neither has the above figure been adjusted to reflect the withdrawal from the partnership of the 70 building lots during 1954 and 1955.↩
10. The $34,600.84 increase allowed petitioner as an additional basis in the 122 ground rents in question is the result of a lengthy and complex series of computations set forth in the notice of deficiency which the respondent indicates on brief are based upon a method of computation adopted by this Court in its decision in Welsh Homes, Inc., 32 T.C. 239, affd. 279 F. 2d 391↩.
11. We are unable to ascertain from the petition or from petitioners' brief whether they seek to characterize the claimed loss as an ordinary loss or as a capital loss.↩
12. If petitioners are basing their theory on an assumption that either the Building Company or the Second Investment Company were terminated on December 31, 1956, within the meaning of sec. 708(b)(1) of the Code, the record fails to support such an assumption.↩
13. SEC. 732. BASIS OF DISTRIBUTED PROPERTY OTHER THAN MONEY. * * *
(d) Special Partnership Basis to Transferee. - For purposes of subsections (a), (b), and (c), a partner who acquired all or a part of his interest by a transfer with respect to which the election provided in section 754 is not in effect, and to whom a distribution of property (other than money) is made with respect to the transferred interest within 2 years after such transfer, may elect, under regulations prescribed by the Secretary or his delegate, to treat as the adjusted partnership basis of such property the adjusted basis such property would have if the adjustment provided in section 743(b)↩ were in effect with respect to the partnership property. The secretary or his delegate may by regulations require the application of this subsection in the case of a distribution to a transferee partner, whether or not made within 2 years after the transfer, if at the time of the transfer the fair market value of the partnership property (other than money) exceeded 110 percent of its adjusted basis to the partnership.
14. Of the 44 houses sold by the Building Company in 1957 subject to ground rents, 39 houses were located in Gray Haven No. 7 and 5 houses were situated in Gray Haven No. 8.↩
15. Of the 40 houses disposed of by the Building Company in 1958 subject to ground rents, 3 houses were located in Gray Haven No. 7 and 37 houses were situated in Gray Haven No. 8.↩
16. Md. Ann. Code, art. 73A, secs. 29 and 31 (1951).↩
17. The parties have assumed on brief that the characterization of the gain resulting from the disposition of the 383 lots here in question was to be determined at the partnership level by looking to the intention of the several partners as a whole rather than examining the purpose of each individual partner. From our reading of the provisions of subchapter K of the 1954 Code pertaining to partnerships, secs. 701-771, it is unclear whether such characterization was intended by Congress to be made at the partnership level or the individual partner level. Cf. Malat v. Riddell, supra; United States v. Rosebrook, 318 F. 2d 316, affirming, 191 F. Supp. 356; Katherine Anne Berryman, 37 T.C. 45↩. Inasmuch as in our opinion we would be compelled on the record before us to reach the same result under this issue regardless of whether we view the question of the characterization of the gain at the partner level or the partnership level, we do not here attempt to decide this question.
1. Additions to partnership basis of land sold.↩
18. In his notice of deficiency for 1956 and 1957 respondent also included certain other adjustments relating to petitioners' computation of gain on the sale of the Greenbriar lots. These adjustments related to the proper method of computing the gain so realized under the installment method of reporting and are not in issue herein.↩